**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QUANTUM LOYALTY SYSTEMS, INC., and QUANTUM CORPORATION OF NEW YORK, INC., | : : : : | |
| Plaintiffs, | : : | Civil Action No. 09--022-SLR/MPT |
| v. | : : | |
| TPG REWARDS, INC. and JOHN GALINOS, | : : | |
| Defendant. | : : | |

<u>**REPORT AND RECOMMENDATION**</u>

This is a patent infringement case.  In the first amended complaint, Quantum Loyalty Systems, Inc. and Quantum Corporation of New York, Inc. (collectively "Quantum") sued TPG Rewards, Inc. ("TPG") and John Galinos ("Galinos") (collectively "defendants") on a patent owned by Quantum.  Galinos moves to dismiss the claim against him for lack of personal jurisdiction and, alternatively, for failure to state a claim for which relief may be granted.  Should this court lack personal jurisdiction as pled in the first amended complaint, then Quantum requests jurisdictional discovery.  Lastly, defendants move to dismiss the first amended complaint for failure to state a claim for which relief may be granted.  This report and recommendation addresses those motions.

**Statement of Facts**[1]

Quantum owns U.S. Patent No. 7,337,949 ("'949 patent"), titled "System for Marketing Leisure Activity Services Through Prepaid Tickets." The patent deals generally with the use of pre-paid promotional cards that consumers redeemable for a product or service, such as a movie theater ticket.[2] Quantum's priority filing date for the '949 patent is April 20, 2004 and the patent was issued on March 4, 2008.

TPG provides promotion services to its clients through incentive rewards programs. TPG first offered such a program, MOVIE CASH® ("Movie Cash"), in 1994. At its inception, Movie Cash existed only in a paper ticket form. TPG subsequently expanded its Movie Cash program to include both prepaid debit cards and e-tickets obtained by activating a promotional code. TPG either mails the debit cards directly to consumers or packages them with the purchased product. With e-tickets, TPG sends the redemption code to the consumer, who then enters the code onto a website and prints out the movie ticket from his or her own printer. TPG claims that it has offered its Movie Cash debit card to customers since at least 2002.

Galinos is the president and chief executive officer of TPG. He is a resident of the State of New York. Galinos' office is also in New York. He owns no real property in Delaware. Galinos is the inventor of one of the alleged infringing Movie Cash programs,

---

[1] All facts referenced herein are found in the complaint and the parties' briefs.

[2] Specifically, the patent covers a method for providing a payment mode for services, comprising two steps: (a) "providing service specific payment modes"; and (b) "enabling a variable redemption of the payment mode for service provided by one of the plurality of service providers." The payment mode "is configured for data transfer over a communications network capable of recognizing the unique identified, the communications network including any of a credit card network, a debit network, and a financial transaction network."

but assigned all rights to that product to TPG.  Galinos further avers in an affidavit that he has not conducted business in Delaware and that TPG's Movie Cash program has not been sold in Delaware.

Quantum argues that this court has personal jurisdiction over Galinos.  Quantum claims that Galinos, either directly or through TPG, regularly conducts business, solicits business, engages in a persistent course of conduct, or derives substantial revenue from the sale of services or other things in Delaware.  Further, Quantum insists that the '949 patent was infringed within Delaware and that this infringement caused injury outside of Delaware.  Quantum contends that Galinos and TPG are so intertwined that they are alter egos and that Quantum has thus pierced the corporate veil.  Quantum alleges that TPG's Movie Cash program utilizes debit cards that infringe the '949 patent. They also state that the e-ticket program may infringe the '949 patent, but request further discovery.

Quantum filed their complaint against TPG on January 12, 2009.[3]  TPG filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on March 4, 2009.  On April 17, 2009, Quantum filed their first amended complaint.  Galinos filed a motion contesting personal jurisdiction under Rule 12(b)(2) and, alternatively, moved to dismiss the amended complaint under Rule 12(b)(6) on May 13, 2009.  Also on May 13, 2009, defendants moved to dismiss the first

---

[3] TPG filed a related claim against Quantum and an additional party on January 21, 2009 in the United States District Court for the Southern District of New York, in which TPG requests declaratory judgment of invalidity and non-infringement regarding three patents owned by Quantum, including the '949 patent, and alleges unfair competition under New York law.  *See TPG Rewards Inc., v. Quantum Loyalty Systems, Inc., et al.*, No. 09-cv-00562 (DLC).

amended complaint pursuant to Rule 12(b)(6).  On June 1, 2009, Quantum filed their

opposition to Galinos' motions and alternatively moved for jurisdictional discovery.  The

May 13 motions and the motion for jurisdictional discovery have been fully briefed and

are presently under consideration.

**Standard of Review**

    ***Personal Jurisdiction***

    Motions to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)

require the court to examine the pleadings and "accept as true all allegations of

jurisdictional *fact* made by the plaintiff and resolve all factual disputes in the plaintiff's

favor."[4]  However, a Rule 12(b)(2) motion is "inherently a matter which requires

resolution of factual issues outside the pleadings, i.e. whether *in personam* jurisdiction

actually lies."[5]  Thus, the court's review is not limited to the face of the pleadings.  Rule

12(b)(2) requires the court to dismiss a case when it lacks personal jurisdiction over the

defendant.[6]  While the plaintiff ultimately must prove by a preponderance of evidence

that the court has personal jurisdiction over the defendant, at the pleadings stage, the

plaintiff need only allege facts sufficient to establish *prima facie* personal jurisdiction.  If

jurisdiction is challenged, however, the plaintiff must respond with "actual proofs" and

may no longer "rely on the bare pleadings alone to withstand a defendant's Rule

12(b)(2) motion."[7]

---

[4] *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 642 (D. Del. 2006) (emphasis added).

[5] *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990).

[6] *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112, 119 (D. Del. 2000).

[7] *Patterson*, 893 F.2d at 604.

For personal jurisdiction to exist over the defendant, the plaintiff must satisfy two requirements:  statutory and constitutional.  First, the plaintiff must establish that this court has authority under the forum state's long-arm statute to bring the defendant before the court.[8]  Second, the plaintiff must establish that exercising jurisdiction over the defendant comports with constitutional due process.[9]  If the court does not have authority under the relevant state statute, there is no need to address the constitutional question.

When a jurisdictional defense is raised, the burden rests with the plaintiff to establish the required minimum contacts between the defendant and the forum state with reasonable particularity.[10]  When raising a Rule 12(b)(2) defense, the defendant must provide an affidavit contradicting the jurisdictional allegations made by the plaintiff.  "Once these allegations are contradicted by an opposing affidavit, however, plaintiffs must present similar evidence in support of personal jurisdiction."[11]  If the plaintiff offers an affidavit or other supporting evidence, the court is "bound to accept these representations and defer final determination as to the merits of the allegations until a pretrial hearing or the time of trial."[12]  Should the moving party fail to provide evidence contradicting the allegations, the court must accept the plaintiff's pleadings as true,

---

[8] Under Fed. R. Civ. P. 4(e), a federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.

[9] *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945)

[10] *Monsanto*, 443 F. Supp. 2d at 642.

[11] *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 381-82 (M.D. Pa. 2009).

[12] *Id.* at 382.

regardless of what the plaintiff submits in support.[13]

A plaintiff must establish either specific jurisdiction or general jurisdiction.[14] Specific jurisdiction applies when the cause of action arises from contacts within the forum state.[15]  "General jurisdiction may be exercised over a defendant whose contacts with the forum state are 'continuous and substantial'" regardless of whether those activities are related to the particular cause of action.[16]

The Delaware Supreme Court interprets the Delaware long-arm statute to the maximum extent possible to "provide residents a means of redress against those not subject to personal service within the State."[17]  When the defendant is a nonresident, the pertinent part of the Delaware long-arm statute provides:

> [A] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1)  Transacts any business or performs any character of work or services in the State . . .
>
> (3)  Causes tortious injury in the State by an act or omission in this State;
>
> (4)  Causes tortion injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .[18]

Sections 3104(c)(1) and (c)(3) are specific jurisdiction provisions, where there must be a

---

[13] *Id.*

[14] *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003).

[15] *See Kloth v. Southern Christian University*, 494 F. Supp. 2d 273, 279 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[16] *Id.* at 280.

[17] *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del 2002) (quoting *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997).

[18] 10 *Del. C.* § 3104(c).

nexus between the cause of action and the conduct of the defendant as a basis for jurisdiction.[19]  Subsection (c)(4) is a general jurisdiction provision, which requires a greater extent of contacts, but applies when the claim is unrelated to forum contacts.[20]

### Failure to State a Claim

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.[21]  The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[22]  Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[23]  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[24]  A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[25]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the

---

[19] *Monsanto*, 443 F. Supp. 2d at 642; *TriStrata Technology, Inc. v. Emulgen Laboratories, Inc.*, 537 F. Supp. 2d 635, 640 (D. Del. 2008) (citing *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)); *see Sanitec Industries v. Sanitec Worldwide, Ltd.*, 376 F. Supp. 2d 571 (D. Del. 2005).

[20] *Applied Biosystems, Inc. v. Cruachem, Ltd*, 772 F. Supp. 1458, 1466 (D. Del. 1991); *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 405 (D. Del. 2002); *Kloth*, 494 F. Supp. 2d at 279.

[21] Fed. R. Civ. P. 12(b)(6).

[22] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[23] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

[24] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

[25] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

assumption that all the allegations in the complaint are true (even if doubtful in fact)."[26]
A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief' beyond labels
and conclusions."[27]  Although heightened fact pleading is not required, "enough facts to
state a claim to relief that is plausible on its face" must be alleged.[28]  While the court
assumes that all factual allegations in the complaint are true and draws all reasonable
factual inferences in the light most favorable to the plaintiff, it rejects unsupported
allegations, "bald assertions," and "legal conclusions."[29]  "When a claim has been stated
adequately, it may be supported by showing any set of facts consistent with the
allegations in the complaint."[30]

"Courts generally consider only the allegations contained in the complaint,
exhibits attached to the complaint and matters of public record" when reviewing a
motion to dismiss.[31]  Rule 12(d) addresses the use of materials which are outside the
pleadings in motions to dismiss under Rule 12(b)(6).  When such materials are
presented, the motion is treated as one for summary judgment.  However, certain
additional materials may be considered without converting the motion to dismiss into a
motion for summary judgment.  Moreover, a court is "not limited to the four corners of

---

[26] *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007); *see also Victaulic Co v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[27] *Twombly*, 550 U.S. at 555.

[28] *Id.* at 570.

[29] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc v. Pennsylvania Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).

[30] *Twombly*, 550 U.S. at 562-563.

[31] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 988 F.2d 1192, 1196 (3d Cir. 1993).

the complaint" and cases have allowed "consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint whose authenticity is unquestioned . . . ."[32]  A plaintiff is entitled to notice and a fair opportunity to respond to any evidence the court might consider in its review of a motion to dismiss.  Where a plaintiff has such notice, however, it is proper for the court to consider that evidence.

### *Jurisdictional Discovery*

The general rule in the Third Circuit allows jurisdictional discovery unless the plaintiff's jurisdictional claims are "clearly frivolous."[33]  Where the plaintiff's claims are not "clearly frivolous," district courts are advised to grant jurisdictional discovery requests, especially when the request concerns whether a corporation did business within a state.[34]  However, "[w]here the defendant is an individual, the presumption in favor of discovery is reduced."[35]  In analyzing a plaintiff's jurisdictional claim, the "claim is not clearly frivolous if the plaintiff has stated with reasonable particularity the basis for jurisdiction, and the 'court [is] satisfied that there is some indication that this particular

---

[32] 5B CHARLES WRIGHT &  ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2007).  On a motion to dismiss, the court may properly consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case." *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2004)).

[33] *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 107 F.3d 1026, 1042 (3d Cir. 1997).

[34] *Honeywell Int'l. Inc. v. Apple Computer, Inc.*, C.A. No. 04-1338-JJF, 2008 U.S. Dist. LEXUS 32857, at *8 (D. Del. 2008).

[35] *Massachusetts School of Law*, 107 F.3d at 1042.

defendant is amenable to suit in this forum.'"[36] This test requires the plaintiff provide

more than a "mere unsupported allegation that the defendant transacted business in an

area."[37]  The "[p]laintiff has an obligation to provide more than labels and conclusions."[38]

**Discussion**

> ### Long-Arm Statute

In its first amended complaint, Quantum contends that the court has personal

jurisdiction over Galinos and TPG under § 3104(c)(1), (c)(3), and (c)(4) of the Delaware

long-arm statute,

> 12. . . . [B]y virtue of their activities directly or through an
> agent within this judicial district because each regularly
> conducts and transacts business in Delaware, the
> [d]efendants' acts of patent infringement have occurred and
> are occurring within Delaware, and [d]efendants are causing
> injury in Delaware by reason of their infringing activity
> outside Delaware, where [d]efendants do or solicit business
> in Delaware, engage in a persistent course of conduct in
> Delaware, or derive substantial revenue from the sales of
> services provided or things used or consumed in Delaware.

Galinos' first challenge to personal jurisdiction is that Quantum "merely recites"

the long-arm statute, and its only grounds for jurisdiction is Galinos' position as

President and CEO of TPG, a Delaware corporation.  Galinos argues that Quantum

inappropriately groups him with TPG because the acts of TPG are irrelevant as to

whether there is personal jurisdiction over him as an individual.  Galinos also asserts

that he does not reside or own property in Delaware, and is, therefore, not subject to

---

[36] *Honeywell*, 2008 U.S. Dist. LEXUS 32857 at *8-9 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).
[37] *Massachusetts School of Law*, 107 F.3d at 1042 (internal quotations omitted).
[38] *Id.*

general jurisdiction in Delaware.  For the following reasons, the court finds that the Delaware long-arm statute does not reach Galinos.

As previously mentioned, subsections (c)(1) and (c)(3) are specific jurisdiction provisions, which require a plaintiff to prove "a nexus between the cause of action and the conduct used as the basis for jurisdiction."[39]  The first subsection "requires that some act must have actually occurred in Delaware . . . and that the causes of action asserted . . . must have arisen from the Delaware contact."[40]  While Quantum does allege that Galinos "caused TPG to be incorporated in Delaware," the instant matter for infringement does not arise from the act of incorporating.  In *Applied Biosystems, Inc.*, the court found that "the incorporation of [the subsidiary company] in Delaware would provide specific jurisdiction over any tort causes of action related to the act of incorporation . . . [but] the act of incorporation does not confer jurisdiction for unrelated torts, and the present suit is confined to patent infringement."[41]  Furthermore, the fiduciary shield doctrine "prohibit[s] acts performed by an individual in the individual's capacity as a corporate employee from serving as the basis for personal jurisdiction over that individual."[42]  Other than the incorporation of TPG, Quantum has not pled any

---

[39] *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 672 (D. Del. 2008); *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 503 (D. Del. 2003) ("In order for a court to exercise jurisdiction under [subsections] (c)(1) and (c)(3), some act must actually occur in Delaware.").

[40] *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

[41] *Id.* at 1467-68 (internal citations omitted).

[42] *Reach & Assocs.*, 269 F. Supp. 2d at 503. Courts have consistently found that the fiduciary shield doctrine bars a finding of personal jurisdiction based solely on an individual's capacity as a corporate employee.  The doctrine, however, does not completely bar a corporate employee from personal jurisdiction.  Instead, a court will consider "all forum related contacts," including any contacts by the individual in their

facts linking an act or omission by Galinos in Delaware to the alleged patent infringement.  No facts are alleged showing that Galinos personally made, used, offered to sell, or sold any alleged infringing product in Delaware.  Beyond mere conclusory statements, there is nothing to corroborate the claim that Galinos personally and knowingly sold or offered to sell any material part of an allegedly infringing product in Delaware.  Since the pleadings fail to illustrate the necessary nexus between the act and the injury, Quantum is unable to satisfy the requirements of subsection (c)(1).

Although the requirements of subsection (c)(3) are similar to that of subsection (c)(1), subsection (c)(3) must be discussed separately because the asserted action, patent infringement, is a tort.  The court's finding that no act or omission by Galinos occurred in Delaware for purposes of (c)(1) is applicable to subsection (c)(3) as well.  In response to Galinos's declaration denying any contacts under § 3104, Quantum responded with an affidavit to which copies of the defendants' applications for patents covering the alleged infringing product and an assignment agreement are attached.  These documents, however, do not support Quantum's assertions.  In fact, the assignment agreement evinces that Galinos transferred the patents to TPG *outside* of Delaware.[43]  Even assuming that Galinos committed an act in Delaware, Quantum fails to satisfy the second requirement of subsection (c)(3), that the injury occurred in Delaware.  In a patent infringement case, "[t]he situs of the injury . . . is the place of the patent holder's residence."[44]  Quantum is a Nevada corporation with a place of business

---

fiduciary capacity. *Id.* at 504.
    [43] The assignment agreement clearly shows that it was executed in New York and that Galinos no longer maintains property rights to the TPG patents.
    [44] *Applied Biosystems, Inc.*, 772 F. Supp. at 1468.

in Nevada.  The injury resulting from any purported infringement would, therefore, occur in Nevada, not Delaware.  Finally, Quantum claims that the websites associated with the Movie Cash product "have been available for use and actively target consumers in Delaware."  An interactive website supports a finding of personal jurisdiction if there is "evidence indicating that the website operator intentionally aims the website at the forum state or knowingly conducts business with forum residents via the website."[45] Quantum does allege any facts against Galinos that would satisfy either requirement. Rather, in his affidavit, Galinos asserts that he does not "regularly conduct any business in . . . Delaware," and that TPG has not sold any allegedly infringing product in this state.  Quantum's declaration does not refute those assertions.  Further, Quantum merely alleges in a conclusory fashion that Galinos "regularly conducts and transacts business in Delaware" in the absence of any facts supporting such activities.  Beyond bald, unsupported statements in the first amended complaint, there is nothing to substantiate specific personal jurisdiction over Galinos.  Thus, the court cannot exercise specific jurisdiction over Galinos under subsections (c)(1) or (c)(3) of the Delaware long-arm statute.

Alternatively, a plaintiff may establish general jurisdiction under subsection (c)(4), which requires that a defendant have a "general presence" in Delaware.[46]  In *Reach & Associates*, the court found that the recitation of § 3104(c)(4), without factual specificity, was inadequate to meet the high standard of "persistent course of conduct"

---

[45] *Sanitec Indus. v. Sanitec Worldwide, Ltd.*, 376 F. Supp. 2d 571, 574 (D. Del. 2005).  The first amended complaint fails to suggest that the website was operated by Galinos.

[46] *Reach & Assocs.*, 269 F. Supp. 2d at 505; *see Parker*, 530 F. Supp. 2d at 673.

required to confer general jurisdiction.[47]   Quantum does not allege any personal conduct on the part of Galinos, such as frequent trips to Delaware or ownership of property in the State, to satisfy general jurisdiction.   Paragraph twelve of Quantum's first amended complaint (quoted above) surmises that personal jurisdiction exists "over [defendants] by virtue of their activities," but Quantum does not explain the "activities" upon which it relies.   Quantum merely recites the elements of § 3104(c)(4) as its factual basis which is insufficient to establish general jurisdiction.   Galinos' declaration, in support of his motion indicates that there is, in fact, no personal activity or conduct permitting the conclusion that general jurisdiction exists.

In both *Parker* and *Sanitec Industries*, the court found that neither plaintiff alleged sufficient jurisdictional facts to establish general jurisdiction over the defendants.   In *Parker*, the plaintiff alleged that the defendants were directors or officers of a Delaware corporation and received "substantial revenue from the use of products and services that are sold to residents of Delaware . . . ."[48]   The court concluded that the allegations "merely recite the Delaware long arm statute" and were insufficient to overcome the fiduciary shield doctrine and establish general jurisdiction over the defendants.[49]   Similarly in *Sanitec Industries*, the court concluded that the defendant's activities in Delaware, which included filing UCC financing statements and appearing in state court, did not constitute "'substantial and continuous local activity' necessary to subject [the

---

[47] *Id.* at 505.
[48] *Parker*, 530 F. Supp. 2d at 673.
[49] *Id.*

14

defendant] to general personal jurisdiction."[50]  The fiduciary shield doctrine,[51] as applied in *Parker* and *Sanitec Industries*, bars the court from finding general personal jurisdiction solely on Galinos' capacity as President and CEO of TPG.  Therefore, Quantum fails to establish general jurisdiction over Galinos pursuant to Delaware's long-arm statute.

### Agency Theory

Quantum contends that even if Galinos is not personally subject to Delaware jurisdiction, TPG, as a Delaware corporation, is.  Since § 3104(c) confers jurisdiction over a nonresident "who in person *or through an agent*" does the activities enumerated in the pertinent subsections, Quantum attempts to establish jurisdiction over Galinos under an agency theory.

This agency theory considers the "degree of control" by the defendant over the agent.[52]  Cases dealing with agency, although addressing the concept in the parent-subsidiary relationship, are instructive.[53]  When applying an agency theory, a court focuses on the arrangement between the entities, the authority given in that arrangement, and the relevancy of that arrangement to the plaintiff's claim.[54]  In *Applied Biosystems*, the court noted the factors relevant to whether the parent is controlling the actions within the forum state include: "the extent of overlap of officers and directors,

---

[50] *Sanitec Indus.*, 376 F. Supp. 2d at 574.
[51] *See* discussion *supra* note 42.
[52] *Applied Biosystems, Inc.*, 772 F. Supp. at 1463.
[53] *See generally Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636 (D. Del. 2006).; *Telcordia Techs., Inc. v. Alcatel*, C.A. No: 04-874 GMS, 2005 WL 128061 (D. Del. May 27, 2005); *ACE & Co., Inc. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418 (D. Del. 2001); *C.R. Bard, Inc. v. Guidant Corp., et. al.*, 997 F. Supp. 556 (D. Del. 1998).
[54] *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 531 (D. Del. 2008).

15

methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business."[55]  If an agency relationship exists, the court will consider the parent company responsible for the specific jurisdictional acts of the subsidiary.[56]

Quantum urges the court to find that "the acts of TPG or Galinos were done with the permission, consent, knowledge, and active inducement on the part of the other . . . ."  The pleadings, however, fail to allege any activities to support the claim that Galinos personally induced TPG to make, use, offer to sell, or sell the allegedly infringing products in Delaware.[57]  Even if Quantum sufficiently pled that Galinos controlled the actions of TPG, Quantum still must prove a nexus between TPG's conduct and its underlying claim of patent infringement.  The language of § 3104(c) clearly provides that those activities need actually be done by the agent:  an agency relationship, alone, will not suffice.  Therefore, Quantum cannot succeed under an agency theory.[58]

---

[55] *Applied Biosystems, Inc.*, 772 F. Supp. at 1463.

[56] *Id.*

[57] Quantum claims that the present matter is analogous to *Sensonics, Inc. v. Aerosonic Corp.,* where the court found the corporation president and CEO jointly and severally liable for inducing patent infringement. 81 F.3d 1566, 1575-76 (Fed. Cir. 1996).  Contrary to *Sensonics*, Quantum has not pled facts evidencing fraud or willful misconduct by Galinos.  There is nothing in the first amended complaint to support Quantum's assertion that Galinos "aided, participated in, approved, ratified and induced infringement . . . ."

[58] In its answering brief, Quantum focuses on a "stream of commerce" theory arising from a combination of subsections (c)(1) and (c)(4).  "The 'stream of commerce' theory is premised on the idea that a non-resident who places its product in the marketplace may, under certain circumstances, be found to have sufficient contacts for jurisdictional purposes with any state in which its product ends up."  *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 371 (D. Del. 2008).  Under Delaware law, an "intent and purpose to serve the Delaware market" is sufficient to

***Alter Ego Theory***

Quantum argues that a "unity of interest" exists between Galinos and TPG and that each is the alter ego of the other.  In support of its allegation, Quantum notes that Galinos is the President and CEO of TPG, has caused TPG to pay taxes to Delaware, and has "taken steps" to secure and enforce the intellectual property rights in the patent application.

In contrast to the agency theory, the alter ego theory requires "(1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present."[59]  When determining whether to pierce the corporate veil the court examines:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.[60]

Assuming that Quantum's conclusory assertions are true, they are inadequate to

satisfy the stream of commerce theory and confer jurisdiction.  *Id.* at 372.  In order to succeed on this theory against Galinos, Quantum must initially show that an agency relationship exists between Galinos and TPG.  The court, however, has determined that Quantum is unable to satisfy this requirement.  Furthermore, nothing suggests that the intent and purpose of the product is to serve Delaware.  Quantum's assertion that the product "target[s] consumers in Delaware" is conclusory.  "[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world."  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

[59] *Trevino*, 583 F. Supp. 2d at 528.

[60] *CNH America LLC v. Kinzenbaw*, C.A. No. 08-945-GMS, 2009 WL 3737653, at *1 (D. Del. Nov. 9, 2009).

disregard corporate formalities or to indicate any act of "fraud, injustice, or inequity" by Galinos.[61]  "[M]ere ownership or direction of a corporate entity, without more, is not sufficient to establish that the corporate form should be disregarded."[62]  Even if Quantum had pled sufficient facts to establish that Galinos was the alter ego of TPG, the first amended complaint lacks any facts evidencing fraud or inequity.  Delaware law requires that a plaintiff demonstrate the presence of fraud or injustice in the "use of the corporate form."[63]  The pleadings in this matter are simply inadequate to disregard the corporate structure and hold Galinos responsible for the jurisdictional acts of TPG.[64]

### Conspiracy

Quantum further asserts that personal jurisdiction over Galinos is proper under a conspiracy theory.  In its first amended complaint, Quantum states that TPG and Galinos acted with "the permission, consent, knowledge, and active inducement" of the other as "co-conspirators."

The conspiracy theory is based on the premise that "the acts of each co-conspirator are attributable to each of the other co-conspirators."[65]  Therefore, the forum contacts of one conspirator in furtherance of the conspiracy can be used to obtain personal jurisdiction over the other conspirators.  The United States Supreme

---

[61] *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1304 (D. Del. 1990).

[62] *CNH America*, 2009 WL 3737653, at *1.

[63] *Trevino*, 583 F. Supp. 2d at 530 (quoting *In re Foxmeyer Corp.*, 209 B.R. 229, 236 (Bankr. D. Del. 2003)).

[64] Since the claim against Galinos is based on his conduct as President and CEO of TPG, Galinos' motion to dismiss pursuant to Rule 12(b)(6) focuses on Quantum's inability to pierce the corporate veil under the alter ego theory.  Having reached the conclusion that the alter ego theory fails in the present matter, Galinos' motion to dismiss for failure to state a claim should be granted.

[65] *Instituto Bancario Italiano v. Hunter Eng'g Co.*, 449 A.2d 210, 222 (Del. 1982).

Court, however, has limited the application of the conspiracy theory against officers of a single firm.  In *Copperweld Corp. v. Independence Tube Corp.*,[66] the Court determined that "officers of a single firm are not separate economic actors pursuing separate economic interests."[67]  In fact, coordination within the firm is necessary for a business to compete and is not an attempt by the officers to conspire.[68]  Applying the reasoning in *Copperweld*, the court in *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.* concluded that jurisdiction over an employee of a subsidiary company was improper under the conspiracy theory because the defendants constituted a "single enterprise."[69]

The logic of *Copperweld* and *Mobil Oil* are relevant to the present case. Quantum admits that Galinos is the President and CEO of TPG and further acknowledges that a "unity of interest" existed between Galinos and TPG.  In fact, Quantum's allegations consistently group Galinos and TPG as a single entity acting in unison.  In addition, Quantum does not purport that Galinos acted on his own behalf or outside his corporate capacity, further support the argument that Galinos acted in accordance with his position as President and CEO of TPG.  Without any evidence to suggest otherwise, the court must find that the actions of Galinos and TPG do not constitute conspiracy.  Therefore, Quantum's attempt at establishing personal jurisdiction over Galinos under a conspiracy theory is misplaced and, thus, must fail.

---

[66] 467 U.S. 752 (1984).

[67] *Id.* at 769.

[68] *Id.*  The court, however, noted that an exception existed for officers acting on their own behalf.

[69] 833 F. Supp. 437, 445 (D. Del. 1993) (quoting *Copperweld*, 467 U.S. at 771).

### Defendants' Motion to Dismiss

With regard to defendants' motion to dismiss, the binding decisions in *Evans Cooling Systems v. General Motors Corp.*[70] and *Vanmoor v. Wal-Mart Stores, Inc.*[71] control.  Both cases addressed appeals from a grant of summary judgment to defendants in patent infringement suits pursuant to the "on sale" bar under 35 U.S.C. § 102(b).[72]  In each case, appellant maintained that summary judgment was inappropriate because appellee failed to prove by clear and convincing evidence that the accused product anticipated the patent-in-suit.[73]  The *Evans* and *Vanmoor* courts rejected this argument, holding that appellee's burden was satisfied by appellant's allegation that the accused products infringed its patent.[74]  Both holdings relied on the fact that appellant's allegation of infringement formed the entire basis for its complaint.[75]

---

[70] 125 F.3d 1448 (Fed. Cir. 1997).

[71] 201 F.3d 1363 (Fed. Cir. 2000).

[72] *See Evans*, 125 F.3d at 1449; *Vanmoor*, 201 F.3d at 1364.  35 U.S.C. § 102(b) states that a person is not entitled to a patent if "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States."  A claimed invention is considered to be on sale within the meaning of Section 102(b) if:  (1) the product is the subject of a commercial offer for sale; and (2) the invention is ready for patenting.  *See Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67-68 (1998).  The second requirement may be satisfied by proof of reduction to practice prior to the critical date.  *Id.*

[73] *Evans*, 125 F.3d at 1451; *Vanmoor*, 201 F.3d at 1366.

[74] *Evans*, 125 F.3d at 1451; *Vanmoor*, 201 F.3d at 1366.

[75] *Evans*, 125 F.3d at 1451; *Vanmoor*, 201 F.3d at 1366.  Quantum seeks to leverage this aspect of the *Evans* and *Vanmoor* opinions by citing *IXYS Corp. v. Advance Power Tech., Inc.*, No. C 02-03942, 2004 WL 540513 (N.D. Cal. March 18, 2004).  The *IXYS* court rejected *Evans* and *Vanmoor* where plaintiff's claims of infringement encompassed other iterations of the product than the version defendant contended to anticipate.  *See IXYS*, 2004 WL 540513, at *6 ("[Defendant] seeks to

20

Although *Evans* and *Vanmoor* concerned motions for summary judgment, their reasoning applies with equal force to a motion to dismiss.  Whether considering a motion to dismiss *or* a motion for summary judgment, this court must accept as true all allegations of, and must draw all reasonable factual inferences in the light most favorable to the nonmoving party.[76]  Here, Quantum claims that defendants' Movie Cash debit card product infringes the patent-in-suit without alleging *any* facts as to when the infringement began or whether it has continued to this day.[77]  Against this, defendants show that they have not offered a debit card program since 2002–more than one year before the earliest filling date of the '949 patent.[78]  Quantum thus claims infringement by a product whose only appearance in the market preceded the critical

---

exploit [plaintiff's] decision to employ broad language in its pleadings (that may or may not implicate the ["on sale" devices]) without reference to the substantive merits of the infringement claims that do exist.").  The instant matter does not present the same concern.  Here, Quantum's claim of infringement regarding Movie Cash debit cards *must* rely on the 2002 program because, as discussed below, no other such program is alleged to exist.

[76] *Compare Neitzke v. Williams*, 490 U.S. 319, 326 (1989) *and Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994) *with United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) *and Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

[77] *See* D.I. 32 at ¶¶ 27-32.  It is worth emphasing that the recent Supreme Court decision in *Bell Atlantic v. Twombly* superceded the "no set of facts" framework for assessing the sufficiency of a complaint set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *See Twombly*, 550 U.S. 544, 561-63 (2007).  To survive a motion to dismiss after *Twombly*, a plaintiff must now show facts consistent with the allegations in his complaint.  *Id.* at 563.

[78] *See* D.I. 40 at ¶ 4 (stating no other program was executed between 2002 and filing of amended complaint); D.I. 28 at Ex. 2 (displaying a debit card from the program with an expiration date of October 2002); D.I. 32 at Ex. 1 (showing priority filing date of April 20, 2004).  Rather than dispute these facts, Quantum's brief argues infringement by another debit card program implemented on or about May 1, 2009.  Defendants admit to this date.  *See* D.I. 40 at ¶ 2.  That program, however, is not before this court because Quantum's amended complaint, filed April 17, 2009, does not comprehend it.  Quantum's argument that defendants must show identity between these two products to prevail is therefore of no moment here.

date of the patent-in-suit.  Here, as in *Evans*, "there exists no logical space between plaintiff's infringement allegation and defendant's invalidity defense; the facts cannot support one without identically buttressing the other."[79]  Because proof that the Movie Cash debit card product infringes the '949 patent would also prove that the product anticipates under 35 U.S.C. § 102(b), this court recommends granting defendants' motion to dismiss.

### *Jurisdictional Discovery*

A request for jurisdictional discovery may be granted if the plaintiff has provided "factual allegations that suggest the possible existence of requisite contacts between the defendant and the forum State with reasonable particularity."[80]  Generally, a court should allow the plaintiff to take jurisdictional discovery unless the claim is "clearly frivolous."[81]  In addition, the plaintiff must make a showing that discovery will be fruitful.[82]

Quantum's allegations in its first amended complaint are conclusory, and fail to provide a basis for jurisdictional discovery.  In *Parker*, the court declined to order discovery on the same grounds.[83]  Furthermore, Quantum has not stated a basis for jurisdiction over Galinos with reasonable particularity.  Instead, the jurisdictional claims

---

[79] *IXYS*, 2004 WL 540513, at *5 (analyzing *Evans*).

[80] *Power Integrations*, 547 F. Supp. 2d at 376 (internal quotations omitted) (reasonable particularity means a realistic basis for believing that personal jurisdiction exists).

[81] *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 572 (M.D. Pa. 2009).

[82] *Id.*

[83] *Parker*, 530 F. Supp. 2d at 673 n.6; *see also Chocolate Confectionary*, 602 F. Supp. 2d at 572 ("allegations that defendants transact business within the forum do not entitle plaintiffs to jurisdictional discovery").

raised by Quantum are mere labels which simply recited the elements under the Delaware long-arm statute.  Finally, Galinos' declaration submitted in support of his motion to dismiss suggests that discovery would not yield information favorable to extending personal jurisdiction over him.

While the court acknowledges the general policy in favor of granting jurisdictional discovery prior to finding a lack of personal jurisdiction, "the presumption of discovery is reduced" when the defendant is an individual.[84]  Quantum did not satisfy the *prima facie* showing that personal jurisdiction over Galinos exists.  In light of the above analysis and the bare assertions in Quantum's pleadings, the court is convinced that jurisdictional discovery would prove futile in the present matter.  Since Quantum has failed to provide any basis to indicate that "[Galinos] is amenable to suit in this forum,"[85] Quantum's request for jurisdictional discovery should be denied.

.    **ORDER AND RECOMMENDED DISPOSITION**

For the reasons contained herein, I recommend that:

(1) Galinos' motion to dismiss (D.I. 41) be GRANTED;

(2) Defendants' motion to dismiss (D.I. 38) be GRANTED;

(3) Quantum's motion for jurisdictional discovery (D.I. 51) be DENIED; and

(4) Defendants' motion to strike (D.I. 54) DENIED as moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific

---

[84] *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 107 F.3d 1026, 1042 (3d Cir. 1997).

[85] *Honeywell Int'l. Inc. v. Properties, Inc.*, No. 04-1338-JJF, 2008 U.S. Dist. LEXIS 32857, at *9 (D. Del. Apr. 18, 2008).

written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b).  The objections and response to those objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.


Dated: December 23, 2009          /s/ Mary Pat Thynge
                                  UNITED STATES MAGISTRATE JUDGE