IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUANTUM LOYALTY SYSTEMS, INC., and QUANTUM CORPORATION OF NEW YORK, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 09-cv-022-SLR-MPT |
| TPG REWARDS, INC., | ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

Plaintiffs Quantum Loyalty Systems, Inc. and Quantum Corporation of New York (collectively "Quantum") own U.S. Patent No. 7,337,949 ("'949 Patent"). The patent, titled "System for Marketing Leisure Activity Services Through Prepaid Tickets," concerns the use of pre-paid promotional cards that are redeemable for entertainment services such as movie theater tickets.[1] The invention described by the patent allows for payment modes that are redeemed for experiences rather than for cash. Additionally, the described invention allows for "variable rate" redemption which allows admittance for one experience, regardless of cost and does not provide for any refund, rebate or change in the event of a low-cost experience. The patent was issued on March 4, 2008 with a priority filing date of April 20, 2004.

Defendant TPG Rewards, Inc. ("TPG") provides promotional reward services and

---

[1] Specifically, the patent covers a method for providing a payment mode for services, comprising two steps: (a) "providing service specific payment modes"; and (b) "enabling a variable redemption of the payment mode for service provided by one of the plurality of service providers." The payment mode "is configured for data transfer over a communications network capable of recognizing the unique identified, the communications network including any of a credit card network, a debit network, and a financial transaction network."

is based in New York City. In 1994, TPG's predecessor introduced TPG's first reward product MOVIE CASH® ("Movie Cash"). This product used paper tickets that could be presented and used as bank checks by moviegoers for theater admittance. In 2002, TPG's predecessor introduced a Movie Cash debit card product ("the 2002 Card"). Like Movie Cash, the 2002 Card allowed consumers to purchase movie tickets and other items similar to a typical prepaid debit card. TPG expanded Movie Cash to the internet via its e-MOVIE CASH ® ("e-Movie Cash") product in 2006. E-Movie Cash provided consumers with a 16-digit code which was then printed on a piece of paper by the consumer and presented to a participating vendor. In 2009, TPG implemented a second Movie Cash debit card product ("BP Castrol Debit Card"). Like the 2002 Card, the BP Castrol Debit Card could be used as a debit card to purchase anything until the full value of the card was depleted.

## II.     PROCEDURAL BACKGROUND

On January 12, 2009, Quantum filed a complaint against TPG alleging infringement of the '949 Patent. Quantum subsequently filed an amended complaint on April 17, 2009. In the amended complaint, Quantum alleges that TPG's make, use, sale or offer for sale of the Movie Cash debit card product and e-Movie Cash product infringes the '949 Patent.

In lieu of an answer, TPG filed a motion to dismiss on March 4, 2009. TPG stated that the amended complaint described the 2002 Card as an infringing product. Assuming the 2002 Card infringes the '949 Patent as alleged in the amended complaint, TPG argued that the 2002 Card predates the '949 Patent's priority date and therefore is invalidating prior art. In a report and recommendation, this court recommended that

Judge Robinson dismiss the action for a failure to state a claim upon which relief may be granted. This court accepted as true Quantum's claim that the Movie Cash debit card product, which the court determined included the 2002 Card, infringes the '949 Patent and found that the 2002 Card predates the '949 Patent. The court concluded that if the allegations in the amended complaint were accepted as true, the 2002 Card is invalidating prior art.

Quantum filed an objection to the report and recommendation on January 11, 2010. In the objection, Quantum alleged that, in contrast to TPG's other Movie Cash products, the 2002 Card "was redeemable at a fixed rate, not a variable rate, and was not service specific." As a result, Quantum argued, the 2002 Card was not an infringing product and could not serve to invalidate the '949 Patent. According to Quantum, this court incorrectly concluded that Quantum's claims of infringement relied on the 2002 Card. Other infringing Movie Cash programs exist, Quantum argued, which are distinct and separate from the 2002 Card. In her order, Judge Robinson modified the report and recommendation to allow for "the completion of discrete discovery on the issue of product identification" and denied defendant's motion to dismiss without prejudice.[2]

In compliance with Judge Robinson's order, and because "it [was] not clear to the court which Movie Cash program and e-Movie Cash program [had] been identified as infringing," this court ordered additional limited discovery on the issue of product identification.[3] The court ordered plaintiffs to "identify the Movie Cash debit card and e-

---

[2] *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, 2010 WL 1337621, at *1 (D. Del. March 31, 2010).

[3] *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, No. 09-022 (SLR/MPT) at 3 (D. Del. May 19, 2010).

3

Movie Cash debit code product(s)/program(s) of which they are presently aware that they accuse as infringing [and to] confirm whether the 2002 Movie Cash debit card product is alleged to infringe the patent at issue."[4] The court ordered defendant to "identify its Movie Cash debit card and e-Movie cash debit code products/programs from 2002 into 2009 and the date(s) when each product/program was marketed/offered for sale."[5]

On February 2, 2011, following this additional discovery, TPG filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim upon which relief may be granted. Quantum filed an answering brief on March 1, 2011 to which TPG filed a reply on March 18, 2011. Because both parties rely on matters outside the pleadings including depositions, affidavits and exhibits, the court shall convert the motion to dismiss to a motion for summary judgment.[6]

---

[4] *Id.* at 3-4.
[5] *Id.* at 4.
[6] *See* FED.R.CIV.P. 12(d) (providing that if, on a Rule 12(b)(6) matter, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

The court finds that plaintiffs' objections to the court's conversion of the motion to dismiss are waived due to their entry and use of evidence outside of the pleadings. Plaintiffs' position - to reference materials outside of the pleadings in its own brief opposing defendant's motion to dismiss while simultaneously objecting to a Rule 12(d) conversion - would have the court disregard the Federal Rules of Civil Procedure and create a reversible issue due to the court's reliance on impermissible materials.

In their objection to this court's previous report and recommendation, plaintiffs argued that "[d]ocuments supplied by TPG to Quantum (after the motion was fully submitted) establish that the 2002 card is, in fact, not the same as the patented invention or the infringing 2008/09 products." As a result, the court instructed the parties to engage in limited discovery intended to clarify which of defendant's products plaintiffs were claiming infringed the '949 patent. Subsequent to that discovery, plaintiffs never amended nor move to amend their complaint.

Under a 12(b)(6) analysis, the court will consider only the pleadings, "document[s] integral to or explicitly relied upon in the complaint," and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (internal citations omitted) (emphasis omitted).

Adhering to a strict Rule 12(b)(6) analysis, the court's previous report and recommendation remains unchanged due to plaintiffs' failure to distinguish the invalidating 2002 Card from the '949 Patent

4

## III. STANDARD OF REVIEW

Rule 56 allows for summary judgment where "there is no genuine dispute as to any material fact" and one of the parties "is entitled to judgment as a matter of law."[7] Though the burden of proof is on the moving party to establish the absence of a genuine issue of material fact, the nonmoving party is not relieved of his duty to introduce evidence capable of supporting a favorable verdict by the fact finder.[8] There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in their favor.[9] Additionally, factual disputes must be genuine and material to defeat a summary judgment motion. Irrelevant or unnecessary factual disputes are immaterial and are insufficient to defeat a motion for summary judgment.[10]

## IV. DISCUSSION

### A. The 2002 Card and TPG's Current Card Products

Regarding the its Movie Cash product, TPG argues that it has executed two

---

in the pleadings.
    For plaintiffs' benefit, however, the court will consider the unplead materials and, under Rule 12(d), convert the motion to one for summary judgment under Rule 56.
    Plaintiffs' Rule 56(d) motion for additional discovery is denied. Rule 56 allows a nonmovant responding to a motion for summary judgment to show by affidavit or declaration that it cannot present facts essential to justify its opposition and request time to obtain affidavits or declaration or take discovery. In this case, the court issued an order on May 19, 2010 directing the parties to engage in discovery concerning the identity of TPG's Movie Cash debit card and e-Movie Cash debit code products and programs from 2002 through 2009. This motion for summary judgment concerns the identity and difference between these debit card and debit code products and programs. Over the course of two years, Quantum and TPG have been afforded ample time and opportunity to gather the facts regarding this issue. The parties have filed motions previously on these same issues and, according to plaintiffs, concerning the same products. The court issued a discovery order and repeatedly met with the parties to further define the scope of that discovery and to address the production of certain documents. At this stage, if plaintiff cannot present facts essential to justify its opposition to defendant's motion, then no amount of additional time will be sufficient.
    [7] FED.R.CIV.P. 56.
    [8] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256-257 (1986).
    [9] *Id.* at 249.
    [10] *Id.* at 248.

products - the 2002 Card and the BP Castrol Debit Card.  It avers that it did not execute any new Movie Cash debit card products between 2002 and 2009, but has made the 2002 Card available on its website and in promotional materials since its original release.  Additionally, TPG maintains that the 2002 Card had been advertised in an industry trade magazine since 2001.

In opposition, Quantum argues the 2002 Card differs entirely from TPG's other card products.  Unlike the other card products, Quantum asserts, the 2002 Card is branded as a VISA card and is not limited to movie admissions or any particular experience.  The 2002 Card may be presented to any merchant that accepts VISA gift cards for any product as the equivalent of cash.  Additionally, Quantum argues that for certain promotions, the 2002 Card may not be exhausted once event admission is provided and the consumer may use the remaining value on the card for other products or services.  In support of this claim, Quantum refers to a cardholder agreement and a letter that accompanied the 2002 Card's original release.[11]

The letter referenced in Quantum's brief describes the "newest innovation from The Properties group - Movie Cash on plastic!"[12]  The letter describes a product that allows marketers to "offer consumers a free or discounted movie on a pre-loaded card [that can be used] as payment at any theater nationwide that accepts a credit card[.]"[13]  Further, the letter states that the "cards can be used once, or designed to be reloadable," and instructs users to "[d]ispose of the card after use."[14]  The

---

[11] See D.I. 122, Ex. I-J.
[12] D.I. 122, Ex. I.
[13] Id.
[14] Id.

corresponding cardholder agreement provides that "[i]f a purchase is less than the amount then available on the Card, the amount associated with the Card will be reduced by the amount of the purchase . . . ."[15] Because of this cash equivalency, Quantum avers that the 2002 Card does not infringe the '949 Patent.

Quantum also describes the BP Castrol Debit Card as a pre-loaded card with a fixed monetary value "that a user may present . . . to one or more merchants [that] is not necessarily limited to a movie theatre."[16] Quantum states that, "[u]nlike the e-Movie cash or other Movie Cash debit card, [the BP Castrol Debit Card] is branded with the MasterCard logo, which means it can be used anywhere that MasterCard is accepted, for any purpose."[17] Quantum then admits that the BP Castrol Debit Card does not infringe "because it is not an experience based card."[18]

When directed to identify an infringing Movie Cash debit card product, Quantum identifies a product that "was seen on TPG's website in or around 2009 and was depicted in a filing by TPG with the United States District Court for the Southern District of New York."[19] The Southern District of New York filing describes a "method of delivery [that provides] an actual prepaid debit card to the purchaser of the product, which is either mailed to the consumer or packaged with the product being sold to the consumer."[20] The New York filing also provides that a consumer may present the debit

---

[15] D.I. 122, Ex. J at 1.
[16] D.I. 121 at 7.
[17] *Id.* at 7-8.
[18] *Id.* at 8.
[19] *Id.* at 7.
[20] *Id.*, Ex. M at 5.

7

card to a movie theater for redemption, "the same as it would any debit card."[21]

To identify the method by which this product (hereafter "the 2008/2009 Website Card") infringes the '949 Patent, Quantum directs the court to a February 2, 2010 declaration in which John S. Galinos, the president and chief executive officer of TPG, states that e-Movie Cash "is functionally the same as the MOVIE CASH debit card product, except that the 16-digit debit code is printed on a piece of paper from a consumer's computer, rather than embossed on a plastic card." Quantum argues that, because e-Movie Cash is an infringing product and the 2002 Card and the BP Castrol Debit Card are not, Galinos' statement implies the existence of a third product - the infringing 2008/2009 Website Card. Quantum provides no other evidence supporting the existence of the 2008/2009 Website Card.

The Galinos declaration describes the "MOVIE CASH® debit card" as a "fixed rate debit card, just like any other prepaid debit card you might have in your wallet. A consumer may use the MOVIE CASH® debit card to purchase movie tickets, or anything else from any merchant which accepts debit cards issued by that bank (i.e. Visa, Mastercard or Discover)."[22] Galinos then describes the 2002 Card and states that TPG "ordered different batches of MOVIE CASH® debit cards, including generic cards imprinted with the name MOVIE CASH® and others imprinted with specific individual's names, which TPG mailed to 85 select clients in or around June 2002."[23] Galinos maintains that the 2002 Card has been shown and offered for sale on TPG's website

---

[21] *Id.*
[22] *Id.* at 2.
[23] *Id.* at 3.

continuously since 2002 and that, although the card artwork depicted on the website has changed, the Movie Cash debit card product offered is the same fixed rate product which TPG has offered since 2002.[24] Galinos avers that, since 2002, TPG has implemented only one other Movie Cash debit card product - the BP Castrol Debit Card.[25] Galinos does not describe any other card product.

When considering a motion for summary judgment, the nonmoving party's facts must be accepted and all justifiable inferences must be drawn in the nonmovant's favor.[26] Here, Quantum asks the court to infer the existence of an infringing debit card product from Galinos' description of e-Movie Cash's functionality (described as similar to the Movie Cash debit card product) and because the described Movie Cash debit card products do not infringe. While "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,"[27] absent evidence of an infringing debit card product, the purported existence of a 2008/2009 Website Card is mere speculation, not a justifiable inference, and the court will not engage in such speculation.[28]

Further, Quantum's evidence directly contradicts the allegations it posits. The Galinos declaration, which purportedly implies the existence of a third infringing debit card product, explicitly states that no debit card products besides the 2002 Card with varying artwork and the BP Castrol Debit Card have been executed or offered for sale

---

[24] *Id.* at 3-4.
[25] *Id.* at 4
[26] *Anderson*, 477 U.S. at 255.
[27] *Id.*
[28] *See A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 597 (Fed. Cir. 1988).

by TPG.

As a consequence of Quantum's failure to define an infringing debit card product, the court finds that there is insufficient "evidence on which [a] jury could reasonably find" that TPG's Movie Cash debit card products infringe the '949 Patent under 35 U.S.C. §§ 271(a), (b) or (c).[29]

### B. The *Evans Cooling* Doctrine and e-Movie Cash

TPG asks the court to dismiss Quantum's claims against TPG's debit card products and debit code products pursuant to *Vanmoor v. Wal-Mart Stores, Inc.*[30] and *Evans Cooling Sys., Inc. v. GMC.*[31] In *Evans Cooling*, the defendant argued that it marketed an allegedly infringing device prior to the asserted patent's critical date.[32] As a result, the defendant argued that the patent was invalid due to the on-sale bar.[33] The Federal Circuit held that "[a]lthough [defendant] bore the burden of proving that the [infringing device] embodied the patented invention or rendered it obvious for purposes of the summary judgment motion, this burden is met by Evans' allegation, forming the sole basis for the complaint, that the [infringing device] infringes."[34]

Similarly, in *Vanmoor*, the plaintiff filed a complaint alleging that a number of retailers and manufacturers of caulking products infringed his patent directed to the construction of a cartridge used to dispense a caulking compound.[35] The defendants

---

[29] *Anderson*, 477 U.S. at 252.
[30] 201 F.3d 1363 (Fed. Cir. 2000).
[31] 125 F.3d 1448 (Fed. Cir. 1997).
[32] *Evans Cooling*, 125 F.3d at 1450.
[33] *Id.*
[34] *Id.* at 1451.
[35] *Vanmoor*, 201 F.3d at 1364-65.

10

denied the allegations and filed a motion for summary judgment claiming the asserted patent was invalid due to the identity between the accused caulking cartridges and cartridges manufactured, sold and used prior to the critical date of the asserted patent.[36] In support of their motion, the defendants submitted affidavits and documentary evidence "showing that the manufacturing specifications, component dimensions, and methods of operation of at least three of the accused cartridges were identical to those manufactured, used, and sold prior to the critical date."[37] Citing *Evans Cooling*, Federal Circuit found that the "entire basis of the patent infringement claim is [the patentee's] contention that the accused cartridges infringe the [asserted] patent.[38] The defendants "conced[ed] infringement for the purposes of the summary judgment motion and [their] on sale defense,"[39]

In both *Evans* and *Vanmoor*, the Federal Circuit emphasized the identity between the allegedly infringing products and the products being sold, marketed and manufactured before each patent's respective critical date. The *Evans* court noted that "[t]his is not the typical case where the patentee has placed some device on sale prior to the critical date and the accused infringer must demonstrate that this device actually embodied or rendered obvious the patented invention. Here, the entire basis of the lawsuit is [the patentee's] contention that the [infringing device] - the device that was put on sale - contains a cooling system that infringes."[40]

---

[36] *Id.* at 1365.
[37] *Id.*
[38] *Id.* (citing *Evans Cooling*, 125 F.3d at 1451).
[39] *Id.*
[40] *Evans Cooling*, 125 F.3d at 1451.

For the case *sub judice*, in the absence of an infringement claim against the 2002 Card, this is exactly the typical case distinguished in *Evans* where TPG has placed a product, the 2002 Card, on sale prior to the '949 Patent's critical date. As a result, TPG must demonstrate that the device actually embodied or rendered obvious the patented invention. Quantum has explicitly excluded the 2002 Card from the list of potentially infringing products and, subsequent to this court's finding above, the only remaining accusation of infringement is against e-Movie Cash, which was released after the '949 Patent's critical date. As a result, *Evans Cooling* and *Vanmoor* have no application here.

Quantum describes e-Movie Cash, which was released in 2006, as a product that "contains a 16-digit code (corresponding to the familiar 16-digit credit card or debit card code found on a traditional card) that can be processed for payment for admission to a movie." Unlike traditional credit and debit cards, Quantum alleges that e-Movie Cash is subject to significant restrictions. Specifically, Quantum argues that e-Movie Cash can only be used once to gain entry to a specific experience, that it is redeemed at a variable rate, and that no change or further redemption for any unused value is provided to the consumer upon the use of the 16-digit code. In support, Quantum cites to an e-Movie Cash reward certificate which states that the certificate is "[g]ood for ONE movie admission up to $12.00 only" and that the certificate "contains a unique code which can be used for ONE movie admission."[41] Consumers are warned, Quantum observes, that "[u]sing this e-Movie Cash to purchase anything other than a movie ticket will result in a

---

[41] D.I. 122, Ex. A at 1.

failed transaction at the theater [and that] [a]ny other use of [the] code or use past the expiration date will be deemed as fraud."[42]

TPG describes e-Movie Cash as "functionally the same as the MOVIE CASH® debit card product, except that the 16-digit debit code is printed on a piece of paper from a consumer's computer, rather than embossed on a plastic card." Further, TPG describes e-Movie Cash as a "fixed rate 'open loop' product," that can be "used to purchase goods and or services from one or more merchants until the full value of the debit code was used."

The parties differing positions regarding the functionality of e-Movie Cash, the nature of the rate for which the product may be redeemed, and the ability of consumers to use the remaining balances amounts to a genuine issue of material fact. As a result, the defendant's motion as it concerns Quantum's claims against the e-Movie Cash product is denied.

## IV. ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, it is recommended that consistent with this Report and Recommendation:

Defendant's Renewed Motion to Dismiss the First Amended Complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P. (D.I. 113) be GRANTED in-part and DENIED in-part.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b)(1), and D.Del.LR 72.1. The parties may serve and file specific

---

[42] *Id.*

written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.[43] The objections and response to those objections are limited to ten (10) pages each.

The parties are directed to the court's standing Order in Pro Se Matters for Objections Filed under Fed.R.Civ.P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Date:  May 24, 2011                              /s/ Mary Pat Thynge
                                                 UNITED STATES MAGISTRATE JUDGE

---

[43] FED.R.CIV.P. 72(b).