IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUANTUM LOYALTY SOLUTIONS, INC. and QUANTUM CORPORATION OF NEW YORK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TPG REWARDS INC. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) C.A. No. 09-22-SLR <br> ) <br> ) DEMAND FOR JURY TRIAL <br> ) <br> ) <br> ) <br> ) |

## SECOND AMENDED COMPLAINT

Plaintiffs, Quantum Loyalty Solutions, Inc. ("QLS") and Quantum Corporation of New York, Inc. ("QNY") (collectively "Quantum"), for their Second Amended Complaint against Defendant, TPG Rewards Inc. ("TPG"), state that:

### THE PARTIES

1. Plaintiff QLS is a corporation organized and existing under the laws of the state of Nevada with a principal place of business at 926 Incline Way, Suite 200, Incline Village, Nevada, 89451.

2. Plaintiff QNY is a wholly-owned subsidiary of Quantum Loyalty Solutions, Inc., organized and existing under the laws of the state of Nevada with a principal place of business at 926 Incline Way, Suite 200, Incline Village, Nevada, 89451.

3. Upon information and belief, Defendant TPG is a corporation organized and existing under the laws of the state of Delaware with a principal place of business at 111 John Street, 27th Floor, New York, NY, 10038.

4. Upon information and belief, John Galinos ("Galinos") is an individual residing in New York, New York.

5. On information and belief, Galinos is the President and CEO of TPG with a business address of 111 John Street, 27th Floor, New York, NY, 10038, and Galinos does business within this Judicial District.

## JURISDICTION AND VENUE

6. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant TPG by virtue of its incorporation in the state of Delaware and its presence and business activities within this judicial district.

8. This Court has personal jurisdiction over Defendant TPG by virtue of its activities directly or through an agent within this judicial district because it regularly conducts and transacts business in Delaware, the Defendant's acts of patent infringement have occurred and are occurring within Delaware, and Defendant is causing injury in Delaware by reason of its infringing activity outside Delaware, where Defendant does or solicits business in Delaware, engages in a persistent course of conduct in Delaware, or derives substantial revenue from the sale of services provided or things used or consumed in Delaware.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).

**ASSERTED PATENT**

10. On March 4, 2008, United States Patent Number 7,337,949 ("the '949 Patent"), entitled SYSTEM FOR MARKETING LEISURE ACTIVITY SERVICES THROUGH PREPAID TICKETS, was duly and legally issued. A copy of the '949 Patent is attached hereto as Exhibit 1. Plaintiff QNY owns the entire right, title, and interest to the '949 Patent. Exclusive rights in and to the '949 Patent have been licensed to Plaintiff QLS by Plaintiff QNY. Plaintiff QLS is the exclusive licensee of the '949 Patent. Pursuant to the license agreement between Plaintiffs QLS and QNY, Plaintiff QLS has standing to sue for patent infringement of the '949 Patent.

**MOVIE CASH**

11. Defendant TPG makes, uses, sells, or offers for sale products and/or services under the names Movie Cash and e-Movie Cash. These products are delivered by multiple means including through the use of debit cards and debit codes. The e-Movie Cash product uses an "e-ticket," as described by Defendants.

12. Defendant TPG and Galinos have described the Movie Cash product in a statement to a United States District Court as follows: "The MOVIE CASH® program provides customers with three means for delivering the movie ticket to the consumer: (1) the traditional paper ticket; (2) a prepaid debit card; (3) an e-ticket obtainable by activating a promotion code. An 'e-ticket' is a movie ticket which is obtained electronically over the Internet, downloaded and printed by the consumer."

13. Defendant TPG and Galinos have described the e-Movie Cash product in a statement to a United States District Court as follows: "An e-ticket is a movie ticket obtained electronically over the Internet, downloaded and printed by the consumer after activating a

promotion code, and contains a 16-digit debit code (the same as found on traditional debit cards) which the consumer presents to the movie theatre for redemption. The movie theatre processes the debit code in the same way that it processes a prepaid debit card, except that the number must be keyed into a POS (point of sale) terminal since there is no physical debit card to swipe."

14. Defendant TPG and Galinos have described the Movie Cash product as associated with a particular web site in a statement to a United States District Court as follows: "Consumers who receive a movie ticket through any of the various MOVIE CASH® programs are informed of which website to visit to locate movie theatres which participate in that particular MOVIE CASH® program. These websites are referred to as movie theatre locators." The referenced websites are and have been available for use and actively target consumers in Delaware.

15. On or about December 20, 2006, Galinos filed U.S. patent application 11/643,234. At the time Galinos filed this patent application, Galinos was the sole and only owner of the patent application and any intellectual property rights described in that application or associated with that application.

16. On or about September 19, 2007, Galinos filed U.S patent application 11/901,812. At the time Galinos filed this patent application, Galinos was the sole and only owner of the patent application and any intellectual property rights described in that application or associated with that application. This application is a continuation-in-part of U.S. patent application 11/643,234.

17. Galinos is the named inventor of U.S. Application Nos. 11/643,234 and 11/901,812 and purports to be the only inventor of the inventions described in these applications.

18. On or about January 12, 2008, according to records of the United States Patent and Trademark Office, Galinos entered into a contract for good and valuable consideration with

TPG to assign his ownership rights in U.S. Application Nos. 11/643,234 and 11/901,812 to TPG. In that contract, Galinos promised as part of the consideration exchanged in the contract that he would "generally do everything possible which [TPG] shall consider desirable for aiding in securing, maintaining and enforcing proper patent protection for said inventions and vesting title to said inventions and all applications for patents or related foreign rights and all patents."

19.    U.S. Patent Application 11/901,812, according to records of the United States Patent and Trademark Office, published on June 26, 2008 as US 2008/0154722 A1 with the title "Method and Apparatus for Implementation of a Promotional Reward Program."

20.    US 2008/0154722 A1 contains the following statements which purport to describe an invention:

> The user inputs the unique promotion code for verification (Step S102). For example, the user can go to a website, and enter the unique promotion code to be validated, or can enter the unique promotion code by email, text message, or at a kiosk.
>
> If the validity of the unique promotion code is verified, the user is provided with a debit code for the predetermined product or service. The debit code is associated with a predetermined value and is instantly provided to the user through the Internet, by email, by text messaging, or from a kiosk and is used to purchase the predetermined product or service.
>
> According to an embodiment, the debit code may be a sixteen digit number, such as those used for credit cards and/or debit cards, and/or a bar code.
>
> The user also may obtain a debit code at a specific store, or may obtain the debit code via mail.
>
> The user may then utilize the debit code to purchase a predetermined product or service. For example, if the user wants to purchase movie tickets, he/she may show the sales clerk the debit code on the screen of the cell phone. The sales clerk can then input the debit code and the transaction can be processed just like a traditional "debit card" or "credit card" transaction.
>
> According to an embodiment of the present disclosure, the debit code is a sixteen digit number or a bar code that is associated with a predetermined value and may be provided by a bank.

>The number may be sixteen digits so that it can be utilized by merchants in the same manner as sixteen digit "credit card" or "debit card" numbers to pay for merchandise.

21. The June 26, 2008 patent publication contains Figures 5 to 8 which appear to be screen shots from websites used by Defendant TPG to promote and describe the e-Movie cash product. Upon information and belief, the websites described in these figures target consumers in Delaware.

22. Upon information and belief, Defendant TPG believes that the invention described in the U.S. Patent Application 11/901,812 covers all or some aspects of the e-Movie Cash product. Upon information and belief, Galinos has taken steps pursuant to his contractual obligations to TPG to ensure that the intellectual property rights contained in U.S. Application No. 11/901,812 and associated with the infringing e-Movie Cash product are secured and potentially enforceable.

## AUCTION OF THE '949 PATENT FROM UTIX

23. Prior to January 2008, the '949 Patent was owned by Utix. Utix filed for bankruptcy, and the '949 Patent was auctioned as part of the bankruptcy proceeding. On or about January 2008, Utix contacted Galinos and TPG to apprise them that the '949 Patent covers the Movie Cash program.

24. The rules of the bankruptcy auction provided for only a single round of bidding with the highest bidder winning the auction. During the first and only round of bidding, TPG submitted a bid for the '949 Patent, but Quantum submitted the highest bid.

25. After learning that Quantum had submitted the highest bid, TPG contacted Utix and offered a bid higher than the winning bid submitted by Quantum. Utix did not sell the '949

Patent to TPG because, under the rules of the auction, only one round of bidding was permitted. The '949 Patent was sold to Quantum.

26. On information and belief, TPG and its agents conducted due diligence on the '949 patent prior to biding on the '949 patent in the Utix bankruptcy auction. This due diligence included a determination by TPG that the '949 patent is valid, enforceable, and valuable. TPG would not have placed a substantial bid at auction to purchase the '949 patent and would not have sought to violate auction rules to raise its bid and obtain the '949 patent if TPG thought the patent was not valid, was not enforceable and/or did not cover TPG's own products. TPG's knows that the '949 Patent covers the Movie Cash program, that the claims of the '949 patent are valid, and that the '949 patent is enforceable, and thus there exists an objectively high likelihood that TPG's actions constitute infringement of one or more valid claims of the '949 patent. Moreover, TPG either knew, or should have known about the risk. TPG nonetheless continued and continues offering for sale, making, using and selling the infringing Movie Cash debit code and debit card products despite this objectively high likelihood that its actions constituted infringement of a valid patent, and therefore it has willfully infringed one or more claims of the '949 patent.

**COUNT**

27. Upon information and belief, Defendant makes, uses, sells, or offers for sale products and/or services that infringe the '949 Patent, including Defendant's Movie Cash debit card product and Defendant's e-Movie Cash product.

28. Upon information and belief, Defendant TPG has willfully infringed and is now infringing one or more claims of the '949 Patent by making, using, selling, and/or offering to sell a product and/or service that infringes the '949 Patent, including Defendant TPG's Movie Cash

product and Defendant TPG's e-Movie Cash product directly and/or indirectly, under 35 U.S.C. §§ 271(a), (b) and (c).

29. Upon information and belief, Defendant TPG has infringed and is now infringing one or more claims of the '949 Patent directly, contributorily, and/or by actively inducing acts of infringement by others.

30. Upon information and belief, Defendant TPG will continue its infringing activities unless enjoined by the Court.

31. By reason of the above acts, Plaintiffs havs suffered, and will continue to suffer, irreparable injury, for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendant as follows:

A. For judgment to be entered that Defendant TPG has infringed the '949 Patent directly, contributorily, and/or by actively inducing acts of infringement by others;

B. For injunctive relief, both preliminary and permanent, enjoining Defendant TPG, its officers, directors, agents, servants, employees, and all their entities and individuals acting in concert with them or on their behalf from further infringement of the '949 Patent;

C. For Defendant TPG to provide an accounting of its revenues, profits, and gains resulting directly or indirectly from Defendant TPG's infringement of the '949 Patent;

D. For an award of treble compensatory damages resulting from Defendant TPG's willful infringement of the '949 Patent, pursuant to 35 U.S.C. § 284;

E. For an award of costs, pre-judgment and post-judgment interest on any damages awarded, pursuant to 35 U.S.C. § 284 and other applicable law;

F. For an award of enhanced damages pursuant to 35 U.S.C. § 284;

  G. For the Court to declare this case exceptional pursuant to 35 U.S.C. § 285 and award Plaintiffs its costs and reasonable attorneys' fees; and

  H. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury in this action on all claims and issues triable before a jury.

            ASHBY & GEDDES

            /s/ *John G. Day*
            _____
            John G. Day (I.D. #2403)
            Lauren E. Maguire (I.D. #4261)
            Andrew C. Mayo (I.D. #5207)
            500 Delaware Avenue, 8th Floor
            P.O. Box 1150
            Wilmington, DE  19899
            (302) 654-1888
            jday@ashby-geddes.com
            lmaguire@ashby-geddes.com
            amayo@ashby-geddes.com

            *Attorneys for Plaintiffs*

*Of Counsel:*

Brian T. Moriarty
HAMILTON, BROOK, SMITH
  & REYNOLDS, P.C.
530 Virginia Road
P.O. Box 9133
Concord, MA  01742-9133
(978) 341-0036

Dated: August 22, 2011