IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUANTUM LOYALTY SYSTEMS, INC., and QUANTUM CORPORATION OF NEW YORK, INC., : : : : Plaintiffs, : : v. : : TPG REWARDS, INC., : : Defendant. : : | Civil Action No. 09-022-SLR/MPT |

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

On January 12, 2009, Quantum Loyalty Systems, Inc. and Quantum Corporation of New York, Inc. (collectively, "Quantum") filed this action against TPG Rewards, Inc. ("TPG") alleging infringement of U.S. Patent No. 7,337,949 ("the '949 patent"), entitled "System for Marketing Leisure Activity Services through Prepaid Tickets."[1] Specifically, Quantum alleges that TPG's "Movie Cash" debit card product and "e-Movie Cash" product infringes the '949 patent.[2] TPG filed an answer and counterclaims to Quantum's second amended complaint on September 8, 2011.[3] Quantum filed its answer to TPG's counterclaims on October 3, 2011.[4] During a teleconference on October 20, 2011, the court advised the parties that the damages and willfulness phase

---

[1] D.I. 1. Quantum's complaint was twice amended. D.I. 32 (Apr. 17, 2009), D.I. 144 (Aug. 22, 2011).
[2] D.I. 144 at ¶ 27.
[3] D.I. 146.
[4] D.I. 155.

of this case would be bifurcated and considered after the liability phase was completed in this court and any subsequent appeals were ruled on by the United States Court of Appeals for the Federal Circuit.[5] During that teleconference, Quantum requested the court likewise bifurcate consideration of certain of TPG's counterclaims (or sever or transfer certain counterclaims) from the court's consideration of liability for infringement of the '949 patent.[6] The parties submitted written arguments in support of their respective positions on Quantum's request.[7] This order sets forth the court's conclusions with regard to that request.

## II. LEGAL STANDARD

A district court has broad discretion to order separate trials of discrete issues or claims if the court finds "bifurcation would be in the furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."[8] The decision is made on a case-by-case basis and subject to the informed discretion of the trial judge in each instance.[9] "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation."[10] In patent cases, bifurcation can be used to simplify the issues and to "maintain manageability of the volume and complexity

---

[5] Oct. 20, 2011 Tr. at 5-7.
[6] *Id.* at 9-19.
[7] D.I. 160 (Quantum); D.I. 163 (TPG).
[8] Federal Rule of Civil Procedure 42(b).
[9] *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978).
[10] *In Re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

of the evidence presented to a jury."[11] While Rule 42(b) suggests that bifurcation can be conducive to judicial expedition and economy, dividing the ultimate resolution of a dispute into separate trials could inevitably lead to additional discovery, more pre-trial disputes, empaneling a second jury, deposing or recalling the same witnesses and the potential for multiple, additional post-trial motions and appeals.[12] Those probable consequences must be weighed and therefore, "bifurcation should be particularly compelling and prevail only in exceptional cases."[13]

**III.  DISCUSSION**

TPG raises eleven counterclaims against Quantum:

Count I:     Declaration of Invalidity, Unenforceability, and Noninfringement of U.S. Patent No. 7,337,949;

Count II:    Declaration of Invalidity and Noninfringement of U.S. Patent No. 7,156,294 ("the '294 patent");

Count III:   Declaration of Invalidity and Noninfringement of U.S. Patent No. 7,066,383 ("the '383 patent);

Count IV:    Attempted Monopolization;

Count V:     False Advertising under Section 43(a) of the Lanham Act;

Count VI:    Deceptive Trade Practices under Delaware Law;

Count VII:   Tortious Interference with Prospective Business Relations;

Count VIII:  Breach of Settlement Agreement;

---

[11] Thomas L. Creel & Robert P. Taylor, *Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice*, 424 PLI/Pat 823, 826 (1995).
[12] *See Kos Pharmaceuticals, Inc. v. Barr Labs.*, 218 F.R.D. 387, 390 (S.D.N.Y. 2003).
[13] *Id.*


    Count IX:    Cybersquatting under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1));

    Count X:    False Designation of Origin under the Lanham Act (15 U.S.C. § 1125(a)); and

    Count XI:    Delaware Common Law Unfair Competition.[14]

Quantum requests the court sever, dismiss, bifurcate, or transfer TPG's Counts II-XI that are purportedly "unrelated to the core factual and legal issues surrounding Quantum's claim of infringement [of the '949 patent]."[15] "Because there is no logical relationship between these counterclaims and the patent issues, severing or transferring the unrelated counterclaims would allow the parties to focus on the patent case, to promptly resolve or settle that dispute, which would in turn likely lead to settlement of all issues."[16]

TPG responds "[n]one of [Quantum's] requested actions is appropriate in this case because the counterclaims are not dependent upon the outcome of the patent claim, and the issues for all of the claims, defenses and counterclaims are substantially intertwined."[17] TPG contends the "issues of damages and willfulness are bifurcated because those issues are *wholly dependent* upon a finding of liability. The same is not true for TPG's counterclaims II through XI. Those claims will be litigated regardless of TPG's patent infringement liability."[18] Moreover, TPG maintains that severance, resulting in "having separate discovery or holding separate trials on [its] counterclaims[,]

---

[14] D.I. 146.
[15] D.I. 160 at 1.
[16] *Id.*
[17] D.I. 163 at 1.
[18] *Id.* (emphasis in original).

4

would be extremely inefficient and repetitive, and severely prejudicial to TPG . . . ."[19] This is true because "TPG's counterclaims and affirmative defenses involve many issues which are identical to or intertwined with the issues to be tried for the '949 patent claim."[20] TPG reasons that efficiency and fairness would be thwarted where severance would "require witnesses to be deposed twice or to testify at two trials about the same facts relating to Quantum's patent claim and TPG's defenses and counterclaims."[21] Consequently, TPG urges the court to reject Quantum's bifurcation and/or severance request.

Counts II and III request a declaration of invalidity and noninfringement of Quantum's '294 and '383 patents. Quantum argues these counts should be bifurcated for purposes of discovery and trial, and not heard until the damages phase of this case or severed from this case entirely.[22] In support of that argument, Quantum states it never asserted those patents against TPG and, because it "never communicated any threat of suit to TPG based on the patents . . . there is no Article III case or controversy between the parties as to these patents and, no basis for declaratory judgment jurisdiction."[23] It also contends the claims of the '294 and '383 patents are different that those of the patent-in-suit and the underlying factual issues are completely different. For instance, Quantum states the claims of the '294 and '383 patents require that the user access a telephone system or "adjusting price of the ticket," requirements not

---

[19] *Id.* at 2.
[20] *Id.*
[21] *Id.*
[22] D.I. 160 at 4.
[23] *Id.* (citing *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884); Fed. R. Civ. P. 12(a)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")).

present in the claims of the '949 patent.[24]

TPG first notes that the "Supreme Court has unequivocally rejected the notion that a 'threat of litigation' is required before a party can seek a declaratory judgment."[25] It also points out that the '383, '294, and '949 patents each contain substantially identical written descriptions,[26] including each having the same title, and that Quantum marks its debit code product, "Hollywood Movie Money" with the patent numbers of all three of those patents. Quantum's Hollywood Movie Money competes with TPG's accused e-Movie Cash product. Finally, TPG maintains "the claims of the '294 patent are central to TPG's Fourth Affirmative Defense of obviousness-type double patenting, which will require the Court to construe the claims of the '294 patent."[27]

Considering the totality of the circumstances, the court agrees with TPG that an Article III controversy exits with regard to TPG's declaratory judgment counterclaims, Counts II and III, concerning the '383 and '294 patents.[28]

---

[24] *Id.*

[25] D.I. 163 at 2 (citing *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 770-77 (2007); *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879-80 (Fed. Cir. 2008) ("In *MedImmune*, the Supreme Court rejected the first prong of our declaratory judgment standard, concluding that the 'reasonable apprehension of suit test' was unduly restrictive. The Court explained that whether a declaratory judgment action contains an Article III controversy must be determined based on 'all the circumstances,' not merely on whether the declaratory judgment plaintiff is under a reasonable apprehension of suit.")) (footnote and citations omitted).

[26] The '294 patent issued from a continuation of the application resulting in the '383 patent. The '949 patent issued from a continuation of the application resulting in the '294 patent.

[27] D.I. 163 at 2; D.I. 146 (Fourth Affirmative Defense) ("The claims of the '949 Patent are invalid under the doctrine of nonstatutory obviousness-type double patenting because the scope of the claims of the '949 Patent and claims of [the '294 Patent], of which the '949 Patent is a continuation, are nearly identical, and are not patentably distinct.").

[28] *See, e.g., Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1159 (Fed. Cir. 2006) (The court determined, under the prior, more restrictive, "reasonable apprehension of suit" standard, that an Article III controversy was present with regard to two patents where patent owner had previously sued the party seeking a declaratory judgment on a third patent and "the patents all describe a similar technology and share a common specification." There, "by suing earlier for the same technology as is now covered by the patents in suit, the patent holder has engaged in a course of conduct that shows a willingness to protect that technology and has created a reasonable apprehension of suit.") (citations, internal quotation marks, and alterations omitted).

Quantum argues TPG's attempted monopolization counterclaim, Count IV, requires "numerous factual inquiries that are entirely unrelated to Quantum's patent infringement claim."[29] Quantum contends such issues include: the relevant product and geographic markets at issue; TPG's, Quantum's, and any other competitors' market share in those markets; and whether barriers to entry exist, and the substantiality thereof, in the relevant market.[30] Quantum also maintains that "TPG incorporates its allegations of false comparative advertising, disseminating false and misleading press releases, trademark infringement, and cybersquatting into its antitrust allegations."[31] Quantum concludes that, in light of the court's bifurcation of the liability and damages phases of its infringement case, the court should not permit TPG's antitrust claims to proceed at this time because "much of the anticipated antitrust discovery will focus on damages and other economic factors and involve discovery matter unrelated to the patent case."[32] It requests the antitrust claims be bifurcated for the purposes of discovery and trial, and not be heard until the damages phase of this case or severed from this case entirely.[33]

TPG contends the antitrust counterclaim is based, in part, on the invalidity and unenforceability of '949 patent, which are two of TPG's affirmative defenses to Quantum's infringement claim, making severance inappropriate.[34] TPG argues that

---

[29] D.I. 160 at 3.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] D.I. 163 at 3. TPG indicates that "[a]t least the following facts plead in TPG's counterclaims (D.I. 146) will be presented at trial of Count IV and Count I: ¶¶ 19-46, 54-55, 58, 66-90, 125-26, 132-37, and 162-65." *Id.* at 3 n.3.

because this case does not involve complex technology, multiple patents, and complex antitrust claims, bifurcation of the antitrust claims from Quantum's infringement claim is not necessary to prevent jury confusion.[35]

In *Synopsys, Inc. v. Magma Design Automation*, a case filed in this court, the plaintiff alleged three counts of patent infringement which, according to the defendant, related to extremely complex software technology.[36] The defendant's answer asserted seven counterclaims, including claims of monopolization and attempted monopolization, both in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.[37] The plaintiff then filed a motion to bifurcate and stay those antitrust claims from the infringement claims.[38] The court denied the motion finding that bifurcation was neither necessary to avoid jury confusion nor would it serve the interest of efficiency.[39] Even though the technology was purportedly complex, the court's experience with jurors in this district was such that those jurors were "quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios."[40] Additionally, the court was confident in the ability of the experienced counsel representing the parties to "craft cogent presentations to aid the jury in this process."[41] The court also found bifurcation would not serve the interests of efficiency, noting the antitrust claims were "based in part on the allegation that [the plaintiff] fraudulently-obtained two of its patents and asserted them against [the defendant] in violation of Section 2 of the Sherman Act.

---

[35] *Id.* at 3.
[36] No. CIV A 05-701 (GMS), 2006 WL 1452803, at *1 (D. Del. May 25, 2006).
[37] *Id.*
[38] *Id.* at *4.
[39] *Id.*
[40] *Id.*
[41] *Id.*

[The plaintiff's] alleged fraud is also a centerpiece of [the defendant's] invalidity claims."[42] Bifurcation, therefore, would likely result in the evidentiary presentation in one case being substantially duplicative of the evidentiary presentation in the other case. "In addition, bifurcation would likely create further duplication of evidence because both juries would need to be educated in the same relevant technology."[43]

Here, the court does not view the technology at issue as particularly complex and is unlikely to be confusing to a jury. The jury in *Synopsys* would have had to consider the same antitrust issues, e.g., relevant markets, market shares, barriers to entry, etc., that a jury in this case would consider. Like the defendant in *Synopsis*, the invalidity and unenforceability of the '949 patent is, in part, the basis of TPG's antitrust claims,[44] as well as, two of its affirmative defenses to Quantum's infringement claim. Therefore, bifurcation here, as in *Synopsys*, would likely result in substantial duplication of evidence, and the presentation thereof, in two separate cases. Consequently, the court concludes neither jury confusion nor efficiency weigh in favor of bifurcating the Count IV antitrust claim from Quantum's infringement claim.

Counts V-VII and XI assert various unfair competition and false statement claims. Quantum contends the bulk of these counterclaims "focuses on a litany of perceived slights and wrongs by Quantum against TPG . . . spanning decades and involving actions and products having nothing to do with the '949 patent or the accused

---

[42] *Id.*
[43] *Id.*
[44] D.I. 146 at ¶ 163 ("Quantum has demonstrated its intent to monopolize the relevant market by, *inter alia*, its bad faith assertion of a patent which, on information and belief, it knows to be invalid and/or unenforceable, against TPG, and its use of this litigation to solicit business from TPG's customers with false and misleading statements about TPG.").

product."[45] Quantum concludes these claims "are an attempt to relitigate issues already litigated and to resolve decades-old slights that will only serve to slow down the patent litigation" and requests these claims be bifurcated for the purposes of discovery and trial or severed from this case entirely.[46]

As noted by Quantum in its arguments concerning Count IV, TPG incorporates allegations of false comparative advertising, disseminating false and misleading press releases, and trademark infringement into its antitrust allegations and the court has already determined that the antitrust claim will not be bifurcated. First, TPG disagrees with Quantum's characterization of these claims as merely related to decades-old actions, asserting the alleged wrongs by Quantum have occurred in the last several years.[47] TPG asserts these claims are "directly tied to the '949 patent infringement claim, and contain factual issues that are common thereto."[48] TPG states that "[o]ne example of a common factual issue is whether Quantum conducted a pre-filing investigation."[49] TPG contends that inquiry is relevant "both to TPG's defense to the infringement claim, and to Counts V-VII and XI of TPG's counterclaims, which will require the jury to decide if Quantum had any basis for making the statements which were made in [a February 2009] press release."[50]

More persuasive, however, is TPG's representation that Counts V-VII and XI (as

---

[45] D.I. 160 at 2-3.
[46] *Id.* at 3, 4.
[47] D.I. 163 at 4 n.5.
[48] *Id.* at 3.
[49] *Id.* at 4
[50] *Id.* TPG states "[a]t least following facts pled in TPG's counterclaims (D.I. 146) involve the subject matter of both (a) '949 patent issues and (2) at least one of Counts V-VII or IX-XI: ¶¶ 19-46, 54-55, 58, 66-90, 125-26, 132-37, 163, 169-70, 177-79, 184-84, 211." *Id.* at 4 n.6.

well as Counts II-III) (collectively, the "New York Claims") were asserted against Quantum in a previous action brought in the United States District Court for the Southern District of New York (*TPG Rewards, Inc. v. Quantum Loyalty Sys., Inc.*, Civil Action No. 09-cv-00562 (DLC) (S.D.N.Y.)). According to TPG, "Quantum has argued in the New York patent action . . . that **all of these claims**, which were originally asserted in the New York action, are related to the '949 patent claim."[51] TPG avers that "Quantum argued before Judge Cote that the New York Claims should be stayed and discovery should not proceed in New York because it would be duplicative of discovery which would be done in this action. Quantum further argued for dismissal of the New York action based upon the first filed rule."[52] TPG maintains it would be severely prejudiced if "this Court severs or bifurcates the New York Claims on the basis that they are not related to the '949 patent claim, after those claims had already been stayed for years because the New York Court and Quantum believed they were indeed related to the '949 patent claim."[53] The court agrees based on TPG's representations of Quantum's position with regard to TPG's unfair competition and false statement claims in the New York action. Quantum cannot have it both ways, staying TPG's claims in the New York action based on the argument they were related to the '949 patent action and staying, or bifurcating, the same or similar claims in this action by arguing the opposite here. Moreover, TPG has represented to the court overlap of facts pled concerning the '949 patent issues and Counts V-VII and XI. Consequently, the court denies Quantum's

---

[51] *Id.* at 4 (emphasis in original).
[52] *Id.*
[53] *Id.*

request to bifurcate or sever those counts from this case.

TPG's Counts VIII, IX, and X allege Breach of Settlement Agreement, Cybersquatting in violation of 15 U.S.C. § 1125(d)(1), and False Designation under the Lanham Act in violation of 15 U.S.C. § 1125(a), respectively. In 2010, TPG filed another suit against Quantum in the Southern District of New York alleging various claims of cybersquatting and related trademark infringement matters (*TPG Rewards, Inc. v. Quantum Loyalty Sys., Inc.*, Civil Action No. 10-cv-07994 (DLC) (S.D.N.Y.)).[54] According to Quantum, the parties settled the matter after mediation through a "Compromise Settlement Agreement." "As part of that settlement agreement, all of TPG's cybersquatting claims were released and pursuant to the final judgment [("the NY Judgment")], its claims dismissed with prejudice."[55] Through the Compromise Settlement Agreement, "[t]he parties agreed that any subsequent action relating to the *settlement judgment* could only be litigated in New York, whereas the issue relating to the *settlement agreement* could be litigated in New York, Delaware or California."[56] Quantum notes TPG references the settlement judgment in its pleadings.[57] Quantum argues, therefore, litigation of that matter must be brought in New York.

Quantum states that TPG, however, "seeks to litigate the settlement agreement issue here and seeks to bring again cybersquatting claims."[58] Quantum contends "those cybersquatting claims have already been released (and/or dismissed with

---

[54] D.I. 160 at 3; D.I. 146 at ¶ 112.
[55] D.I. 160 at 3.
[56] *Id.* (emphasis added).
[57] *Id.* (citing D.I. 146 at ¶ 115 ("Pursuant to the Compromise Settlement Agreement and a Final Order and Judgment On Consent in the Cybersquatting Action, [Quantum] transferred ownership of www.tpgrewards.ca to TPG.")).
[58] *Id.* at 4.

prejudice) and any litigation will necessarily entail interpretation of the New York judgment. Those issues must be handled in New York."[59] Additionally, Quantum argues the "cybersquatting allegations have nothing whatsoever to do with the patent allegations . . . [and] are just another example of TPG's filing unrelated claims to distract from the patent cases" and requests those claims be bifurcated or transferred.[60]

TPG contends its Breach of Settlement Agreement counterclaim, Count VIII, is rightfully asserted in this action and that there is no basis for a transfer of venue. It also contends that "Count VIII alleges a breach by Quantum's use and non-disclosure of a domain name, which contains factual issues in common with other counts (Counts IV, IX, X, XI), which, for the reasons cited [in connection with the unfair competition claims], should not be severed or bifurcated."[61]

The NY Judgment recites that TPG sued Quantum alleging it "registered the domain name, *www.tpgrewards.ca*, with the bad faith intent to profit from the goodwill of TPG in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. ¶ 1125(d)(1), Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and New York unfair competition law" and "[t]he parties having entered into a separate Settlement Agreement to settle the controversy between them; it is hereby ORDERED, ADJUDGED AND DECREED that: . . . "[62]

> 7. The exclusive jurisdiction of this Court is retained for the purpose of making any further orders necessary or proper for the construction or modification of this Final Judgment, the enforcement thereof and the

---

[59] *Id.*
[60] *Id.*
[61] D.I. 163 at 3.
[62] *TPG Rewards*, Civil Action No. 10-cv-07994 (DLC) (S.D.N.Y.) (D.I. 15 at 1-2) (emphasis added).

punishment of any violations thereof. Any motion or proceedings under this paragraph shall be venued in the United States District Court for the Southern District of New York, and the parties consent to this Court's venue and personal jurisdiction for any such motion or proceeding under this paragraph.

8. This Final Order and Judgment on Consent shall be binding on the parties, and their subsidiaries, affiliates, successors and assigns.

9. All defenses and Counterclaims, and all rights to appeal, are hereby waived.

10. This Final Judgment shall be deemed to have been served upon the parties at the time of its execution by the Court.

11. The action is dismissed with prejudice.

Here, TPG brings similar claims for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. ¶ 1125(d)(1) (Count IX) and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count X). The basis of these claims, however, is Quantum's registration and use of the domain name www.emoviecash.us ("the Second Infringing Domain Name"), not the domain name www.tpgrewards.ca that was the subject of its claims in the New York action.[63] Therefore, TPG's current claims, based on the Second Infringing Domain Name, have not been "released (and/or dismissed with prejudice)," as

---

[63] D.I. 146 (Count IX) at ¶¶ 195-199, 202 ("Quantum has registered, trafficked in and/or used the domain name www.emoviecash.us ('the Second Infringing Domain Name'). The Second Infringing Domain Name is identical or confusingly similar to TPG's e-MOVIE CASH mark. Quantum adopted the Second Infringing Domain Name with a bad faith intent to profit from TPG's e-MOVIE CASH mark. Quantum's use of the Second Infringing Domain Name has caused irreparable harm to TPG's goodwill and reputation. . . . Quantum's activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)."); *id.* (Count X) at ¶ 207 ("By reason of the foregoing acts of cybersquatting, Quantum's unlawful conduct constitutes the willful use in interstate commerce of false designations of origin or false or misleading descriptions or representations of fact which are likely to cause confusion, mistake or deception, in that it falsely designates Quantum's goods and services as originating from, being sponsored or endorsed by, and/or being affiliated with TPG, all in violation of 15 U.S.C. § 1125(a).").

Quantum asserts.[64]

TPG's Breach of Settlement Agreement claim (Count VIII) is also based on the Second Infringing Domain Name. In the Compromise Settlement Agreement:

> Quantum warranted and represented that the only domain name it owned or controlled which includes any Federally Registered Trademark of TPG was www.tpgrewards.ca. In the Agreement, Quantum did not disclose that it also owned the domain name, www.emoviecash.us, which includes another Federally Registered Trademark owned by TPG. As a result, Quantum's warranty and representation was false in a material respect.[65]

Quantum acknowledges issues related to the Comprise Settlement Agreement could be litigated in Delaware. Therefore, the court find no basis to transfer either Count VIII, or related Counts IX and X (based on a different domain name than was the subject of the New York litigation), to the Southern District of New York nor to bifurcate those counts from the infringement action.

## IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED, ADJUDGED AND DECREED that Quantum's request to sever, dismiss, bifurcate, or transfer TPG's counterclaims, Counts II-XI, is DENIED.

December 22, 2011  /s/ Mary Pat Thynge
Wilmington, Delaware  Thynge, U.S. Magistrate Judge

---

[64] At the time it commenced its action against Quantum in New York, TPG avers it "was unaware of Quantum's ownership of the Second Infringing Domain Name" and it only learned Quantum had registered the Second Infringing Domain Name after the parties entered into the Compromise Settlement Agreement." *Id.* at ¶¶ 112, 116.

[65] *Id.* (Count VIII) at ¶ 189.

15