IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUANTUM LOYALTY SYSTEMS, INC. and QUANTUM CORPORATION OF NEW YORK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TPG REWARDS, INC. <br><br> Defendant. | C.A. No. 09-22-SLR <br><br> **REDACTED** <br> **PUBLIC VERSION** |

## OBJECTIONS TO THE ORDER DENYING QUANTUM'S MOTION TO SEVER, DISMISS, BIFURCATE, OR TRANSFER

ASHBY & GEDDES
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*

Brian T. Moriarty
Christopher K. Albert
HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 Virginia Road
P.O. Box 9133
Concord, MA 01742-9133
(978) 341-0036
brian.moriarty@hbsr.com
christopher.albert@hbsr.com

Dated: January 5, 2012

{00589721;v1}

## TABLE OF CONTENTS

I. FACTUAL BACKGROUND ................................................................................ 2

II. ARGUMENT ........................................................................................................ 2

    A. The Court Should Dismiss TPG's Declaratory Judgment Counterclaim Alleging Invalidity And Noninfringement Of U.S. Patent Nos. 7,156,294 (Count II) And 7,066,383 (Count III) Because This Court Lacks Subject Matter Jurisdiction Over These Counts ................................................. 3

    B. The Breach Of Settlement Agreement, Cybersquatting, And False Designation Of Origin Claims (Counts VIII – X) Should Be Transferred To The Southern District Of New York In Accordance With The Forum Selection Clause Of **REDACTED** and Final Order and Judgment ................................................. 5

    C. TPG's Attempted Monopolization Counterclaim (Count IV) Is Factually Unrelated And Would Unfairly Prejudice Quantum By Exposing The Jury To Evidence Of Alleged Fraud Before The USPTO ................................................. 8

    D. TPG's Unfair Competition Claims (Counts V-VII and XI) Are Factually Unrelated And Introduce A Broad Set Of New Issues ................................................. 9

III. CONCLUSION ................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*ATMI Packaging, Inc. v. Millipore Corp.*, 2011 U.S. Dist. LEXIS 48165 (D. Mass. May 5, 2011) .................................................................................................. 4

*Brinkmeier v. Exergen Corp.*, 2011 U.S. Dist. LEXIS 63 (D. Del. Jan. 3, 2011) ............................................................................................................................ 7

*Dentsply Int'l Inc. v. New Tech. Co.*, 1996 U.S. Dist. LEXIS 19846 (D. Del. Dec. 19, 1996) ........................................................................................................ 9

*Dorman Prods. v. Dayco Prods., LLC*, 2010 U.S. Dist. LEXIS 43285 (D. Del. May 4, 2010) ...................................................................................................... 7

*Enzo Life Scis., Inc. v. Digene Corp.*, 2003 U.S. Dist. LEXIS 10202 (D. Del. June 10, 2003) ...................................................................................................... 10

*Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991) .......................................... 7

*IGT v. Bally Gaming Int'l Inc.*, 2010 U.S. Dist. LEXIS 41497 (D. Del. Apr. 28, 2010) ........................................................................................................................ 8

*Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960 (3d Cir. 1991) ........................................... 6

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 U.S. Dist. LEXIS 23057 (D. Del. Mar. 11, 2010) .................................................................................... 9

*Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152 (Fed. Cir. 2006) .................... 4

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008) ........................... 4

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ............................................................................................................................. 5

*Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395 (D. Del. 2009) ............................................................................................................................... 8

*Synopsys, Inc. v. Magma Design Automation*, 2006 U.S. Dist. LEXIS 33751 (D. Del. May 25, 2006) ............................................................................................ 8

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................................. 7

28 U.S.C. § 636(b)(1)(A) ..................................................................................................... 3

**Other Authorities**

8 Moore's Federal Practice 41.34[6][c] ...........................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................................................5

Fed. R. Civ. P. 72(a) ........................................................................................................................3

-1-

Plaintiffs Quantum Loyalty Systems, Inc. and Quantum Corporation of New York, Inc. (collectively, "Quantum") submit these Objections to the Magistrate's Order dated December 22, 2011 (D.I. 175) denying Quantum's request to sever, dismiss, bifurcate, or transfer TPG's counterclaims that are factually and legally unrelated to this patent infringement action that Quantum initiated nearly three years ago. Quantum's patent action will focus on the operation of a small group of products sold by TPG since 2008 – certain of TPG's Movie Cash products. In contrast, TPG's counterclaims will focus on Quantum's business activities spanning decades and involving such disparate topics as website domain names, false designation of origin, perceived slights and wrongs by Quantum and/or its CEO in the late 1990's through the late 2000's (and even back to 1967), attempted monopolization, and a litany of other alleged commercial torts. TPG has pleaded a 214 paragraph Counterclaim (D.I. 146), which are the allegations that TPG intends to prove at trial. *See* Declaration of Christopher K. Albert, Esq. in support of Quantum's Objections to the Order Denying Quantum's Motion to Sever, Dismiss, Bifurcate, or Transfer ("Albert Declaration") at ¶ 2, Exh. A (highlighting the non-patent allegations).

TPG's ulterior purpose in now suddenly litigating these decades-old grievances is clear: (1) to slow down the pace of Quantum's patent infringement action; and (2) to dilute and divert Quantum's proof of patent infringement presented to the jury. As TPG knows, the Counterclaims are all factually unrelated to Quantum's patent infringement action and should not be part of this action. Indeed, TPG implicitly conceded during a telephone conference with Judge Thynge on October 20, 2011 that its counterclaims are factually distinct by stating that TPG's counterclaims "could proceed on a separate track simultaneously." *Id.* at ¶ 3, Exh. B at 19:19-24.

I.  **FACTUAL BACKGROUND**[1]

This case was initiated nearly three years ago when Quantum filed a complaint for patent infringement on January 12, 2009. *See* D.I. 1. During the intervening time, Quantum has amended its complaint, and TPG has moved to dismiss (or renewed its motion to dismiss) Quantum's complaints several times. Most recently, the Court held that TPG's motion to dismiss the first amended complaint was rendered moot by Quantum's filing of a second amended complaint. *See* D.I. 154. Importantly, the Court directed that this case "shall move forward expeditiously, with limited discovery ..." *Id.* at 1 n.1 (emphasis added). TPG now seeks to thwart the attempt to move Quantum's patent infringement case forward expeditiously, and has sought extensive discovery on matters entirely unrelated to Quantum's initial patent infringement action. In addition to serving 95 document requests and 15 interrogatories on Quantum, TPG has served ten third-party subpoenas encompassing 222 requests for production, for a total of 317 document requests pending to date. *See* Albert Declaration at ¶¶ 7-9, Exhs. F-H.

II.  **ARGUMENT**

Quantum requests that the Court allow the case to "move forward expeditiously" by: (1) dismissing TPG's counterclaims for which this court lacks subject matter jurisdiction; (2) transferring the breach of settlement and cybersquatting claims to the Southern District of New York, which previously issued a Final Order and Judgment on those issues; and (3) placing TPG's antitrust and unfair competition counterclaims on a separate track, consistent with TPG's expectations, so that Quantum can move to dismiss those claims prior to engaging in discovery (as would be appropriate in any civil action) without further delaying its patent infringement action.

---

[1] The factual background has been set forth in detail in Quantum's prior oppositions to defendant TPG's motions to dismiss and Quantum's prior objections to the first Report and Recommendation, and Quantum refers the Court to those briefings. *See* D.I. 44, 57, 121, 123, 130, 134, and 160. Copies of Quantum's and TPG's letters regarding this motion below to Magistrate Judge Thynge and Magistrate Judge Thynge's Order are attached as exhibits to the Albert Declaration. *See* ¶¶ 4-6, Exhs. C-E.

Conducting all proceeding on a single track imposes two burdens on Quantum. First, it delays Quantum's access to justice on its three-year-old patent infringement claim. Second, since the Court has advised that this case should proceed without any further motions on the pleadings until the completion of discovery, Quantum has <u>never</u> been afforded an opportunity to move for dismissal based on the pleadings. Accordingly, a single track approach imposes the burden of requiring Quantum to undertake expensive antitrust (and other) discovery on TPG's meritless claims. Shifting TPG's counterclaims to a separate track for discovery and trial imposes no prejudice on either party, eliminates prejudice to Quantum, and will aid juror comprehension at the trial stage.

The Magistrate's Order, which requires that all parties' claims proceed simultaneously, is contrary to the law and must be set aside pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A).

### A. The Court Should Dismiss TPG's Declaratory Judgment Counterclaim Alleging Invalidity And Noninfringement Of U.S. Patent Nos. 7,156,294 (Count II) And 7,066,383 (Count III) Because This Court Lacks Subject Matter Jurisdiction Over These Counts

The Magistrate committed legal error by concluding that this Court has subject matter jurisdiction over two patents that Quantum has never asserted, or even threatened to assert, against TPG. Notably, the Court did not permit Quantum to move under Rule 12(b)(1) for lack of subject matter jurisdiction, yet the Magistrate ruled that jurisdiction existed anyway. *See* D.I. 175 at 6. Quantum hereby objects and moves the Court to dismiss Counts II and III of TPG's Counterclaims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because there is no Article III case or controversy between the parties.

The □383 and □294 patents are the grandparent and parent, respectively, of the □949 patent, which Quantum has asserted against TPG. However, a superficial relatedness of the patents

is insufficient to create a case or controversy between Quantum and TPG. Rather, it is Quantum's *objective* actions that are dispositive, not TPG's subjective speculation. "Although MedImmune clarified that an injury-in-fact sufficient to create an actual controversy can exist even when there is no apprehension of suit, it did not change the bedrock rule that a case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants--an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338-39 (Fed. Cir. 2008). For example:

> [T]he patentee's silence does not alone make an infringement action or other interference with the plaintiff's business imminent. Thus, though a defendant's failure to sign a covenant not to sue is one circumstance to consider in evaluating the totality of the circumstances, it is not sufficient to create an actual controversy-- some affirmative actions by the defendant will also generally be necessary.

*Id.* at 1341.

In an almost identical situation, another district court reached precisely the opposite conclusion as the Magistrate reached here. *See ATMI Packaging, Inc. v. Millipore Corp.*, 2011 U.S. Dist. LEXIS 48165, *3 (D. Mass. May 5, 2011) ("declin[ing] to exercise jurisdiction for the purpose of a declaratory judgment deeming the matter to present no 'substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" where the counterclaims pertained to a parent patent having the same specification and identical inventors as a divisional patent asserted by the patentee) (ellipsis in original). The Magistrate's reliance on *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152 (Fed. Cir. 2006) is misplaced because in *Plumtree*, the patentee took affirmative actions with respect to the continuation patents to create a justiciable controversy. On the same day that the patentee filed suit with respect to the parent patent, it also sent a letter stating, "*We also believe that Plumtree will infringe the claims in the continuation*

*patent application when it issues as a patent."* *Id.* at 1156 (emphasis in original). The patentee also demonstrated a willingness to enforce the continuation patents in another forum (Texas) and identified the declaratory judgment plaintiff as an infringer in response to an interrogatory served in the Texas action. In contrast, Quantum has not taken any steps to enforce the ☐294 and ☐383 patents against any parties, let alone TPG.

Instead of focusing on the fundamental question of standing, the Magistrate improperly focused on an assumed evidentiary overlap among the patents (and there is no overlap because each has different claims), as if subject matter jurisdiction had already been established. The critical issue is to review the objective actions taken by Quantum to enforce the ☐294 and ☐383 patents – and Quantum has taken no such action. Accordingly, any further suggestion by TPG that there is "overlap in issues" (D.I. 163 at 2) is wholly irrelevant because it does not alter the fact that this Court simply does not have jurisdiction over Counts II and III. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (scope of the right to exclude is defined solely by the claims, not the specification, title, or identity of the inventors).

Additionally, Quantum notes that litigation regarding the ☐294 and ☐383 patents will result in three *Markman* hearings, encompassing 204 claim terms for construction. *See* Albert Declaration at ¶¶ 10-11, Exhs. I-J. Accordingly, the Court should dismiss Counts II and III of TPG's counterclaims under Fed. R. Civ. P. 12(b)(1).

      **B.**      **The Breach Of Settlement Agreement, Cybersquatting, And False Designation Of Origin Claims (Counts VIII – X) Should Be Transferred To The Southern District Of New York In Accordance With The Forum Selection Clause Of REDACTED and Final Order and Judgment**

The Magistrate committed legal error by retaining jurisdiction over the cybersquatting counterclaims (Counts VIII, IX, and X). The previous cybersquatting litigation settled the case via a settlement and a Final Order and Judgment by the United States District Court for the Southern

-6-

District of New York in Civil Action No. 09-cv-00562 (DLC) ("the New York website action"). In the New York website action, TPG brought broad claims related to Quantum's alleged cybersquatting and other tortious conduct. The parties settled their disagreement pursuant to a Confidential Settlement Agreement and Final Judgment and Order. All claims in that action were finally adjudicated because the Court "dismissed all claims with prejudice," including the present cybersquatting and other claims. *See* Albert Declaration at ¶12, Exh. K at ¶ 11. This dismissal with prejudice operates as a final adjudication on the merits. *See* 8 Moore's Federal Practice 41.34[6][c]; *see generally Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960 (3d Cir. 1991).

Pursuant to the Settlement Agreement,

**REDACTED**

*See* Albert Declaration at 13, Exh L at ¶ 11 (emphasis added). Conversely, only those matters that do not relate to the Final Order and Judgment can be brought outside the Southern District of New York. Accordingly, venue is found exclusively in New York with respect to the matters relating to the Final Order and Judgment, and cannot be litigated in Delaware. Here, TPG's claim will require an analysis of the scope of the "dismiss[al] … with prejudice" and therefore TPG's claims are related to the Final Order and Judgment and must be brought in the Southern District of New York.

Moreover, under the Final Order and Judgment on Consent, the Southern District of New York retained exclusive jurisdiction for the purpose of "construction or modification of this Final Judgment." *See* Albert Declaration ¶ 13, Exh. L at ¶ 7. Pursuant to the confidential Compromise Settlement Agreement between the parties,

**REDACTED**

-7-

**REDACTED**

*See* Albert Declaration at ¶ 13, Exh. L at ¶¶ 5 and 9. Notably, TPG has not alleged that Quantum registered the domain www.emoviecash.us after the Effective Date of the Final Order and Judgment on Consent in the New York website action. *See* D.I. 146 ¶ 104 ("Quantum *was* either the actual or beneficial owner of the First Infringing Domain Name and the Second Infringing Domain Name."). TPG's argument that the dispute is only about the Confidential Settlement Agreement is a disingenuous slight of hand because the Settlement Agreement cannot be construed without also construing the Final Order and Judgment, which must be resolved in New York.

Accordingly, Counts VIII, IX, and X of TPG's counterclaims are inherently bound up with the Final Order and Judgment on Consent issued by the Southern District of New York, and any claims arising out of that Judgment or alleging breach of warranties of that Compromise Settlement Agreement should be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) ("forum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *Brinkmeier v. Exergen Corp.*, 2011 U.S. Dist. LEXIS 63 (D. Del. Jan. 3, 2011) (Robinson, J.) (transferring case due to related litigation in another forum); *Dorman Prods. v. Dayco Prods., LLC*, 2010 U.S. Dist. LEXIS 43285 (D. Del. May 4, 2010) (Robinson, J.) (same).

C. **TPG's Attempted Monopolization Counterclaim (Count IV) Is Factually Unrelated And Would Unfairly Prejudice Quantum By Exposing The Jury To Evidence Of Alleged Fraud Before The USPTO**

TPG's antitrust claim implicates numerous factual inquiries that are wholly unrelated to Quantum's patent infringement claim, including the relevant product market and geographic markets at issue, TPG's and Quantum's market share in those markets (as well as the market share of any competitors), whether or not barriers to entry exist in the relevant market, and the substantiality of those barriers, if any, and therefore should not be joined with the patent case. *See* D.I. 146 at ¶¶ 121-124. The antitrust case also assumes that TPG will succeed in the patent case, which has not yet been proven. In addition, TPG incorporates its allegations of false comparative advertising, disseminating false and misleading press releases, trademark infringement, and cybersquatting into its antitrust allegations. *Id.* at ¶¶ 126-130.[2] The Court has never permitted Quantum to move to dismiss these claims based on the pleadings.[3]

In support of its ruling that the patent and antitrust claims should not be bifurcated, the Magistrate cites to a single case from this district. *See Synopsys, Inc. v. Magma Design Automation*, 2006 U.S. Dist. LEXIS 33751 (D. Del. May 25, 2006) (Sleet, J.). However, the Magistrate did not give appropriate consideration to the great weight of authority within this district that favors bifurcating antitrust and patent claims. *See IGT v. Bally Gaming Int'l Inc.*, 2010 U.S. Dist. LEXIS 41497, *3-4 (D. Del. Apr. 28, 2010) (Robinson, J.) ("During its June 2007 teleconference with the

---

[2] TPG also suggests that the jury should hear the same evidence it intends to present in its inequitable conduct case, which is an issue reserved to the Court. This alone raises the distinct possibility that the jury will be improperly biased against Quantum. Courts have consistently held that inequitable conduct is an issue for the court, not the jury, given the potential for jury bias. *See Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 U.S. Dist. LEXIS 23057, *7 (D. Del. Mar. 11, 2010) (Thynge, Mag. J.) ("Philips' allegations of monopolization could bias the jury when it evaluates Masimo's patent claims.").

[3] For example, TPG has defined the relevant product market extremely narrowly ("promotional rewards companies which provide incentive awards to consumer packaged goods companies and to movie studios in the form of prepaid cards marketed to consumers for the acquisition of goods and/or services" (D.I. 146 ¶ 121), and Courts have upheld motions to dismiss antitrust actions where the alleged market fails as a matter of law. *See Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395, 402-04 (D. Del. 2009) (Farnan, J.). Quantum should be permitted to fully brief this and other issues before being forced to hire expert witnesses and engage in expensive antitrust discovery.

parties, the court stated that it bifurcates antitrust counterclaims insofar as they generally do not survive unless there is a finding of no infringement."); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 U.S. Dist. LEXIS 23057, *5, *7 (D. Del. Mar. 11, 2010) (Thynge, Mag. J.) ("Bifurcation of patent and antitrust claims is not mandatory, but is common."); *Dentsply Int'l Inc. v. New Tech. Co.*, 1996 U.S. Dist. LEXIS 19846 (D. Del. Dec. 19, 1996) (Schwartz, J.) (bifurcating antitrust and patent claims). Accordingly, Quantum requests that the Court sever Count IV of TPG's Counterclaims and place it on a separate track for discovery and trial. As noted, TPG has stated that such a result would be acceptable.

### D. TPG's Unfair Competition Claims (Counts V-VII and XI) Are Factually Unrelated And Introduce A Broad Set Of New Issues

The bulk of TPG's factual assertions purportedly germane to these Counts focus on a litany of perceived slights and wrongs by Quantum against TPG that date as far back as 1967 (45 years ago), and include assertions that Quantum's decision long ago to change its product name from Hollywood Movie Magic to Hollywood Movie Money was done for the purpose of unfairly competing with TPG. *See* D.I. 146 ¶¶ 48-53. A particularly striking example of alleged conduct that is completely unrelated to Quantum's patent infringement action is TPG's assertion that Quantum's CEO was interviewed for a book, "The Sexual Paradox: Men, Women, and the Real Gender Gap" and threatened to "smash" TPG. *Id.* at ¶ 59-61. TPG also seeks to resurrect allegations about a comparative advertising matter that was already litigated and settled. *Id.* at ¶¶ 62-65.

TPG alleged that these unfair competition claims are pertinent to the patent infringement matter because "one example of a common factual issue is whether Quantum conducted a pre-filing investigation." *See* D.I. 163 at 4. TPG's statements appear to be posturing for a future Rule 11 motion, which is most certainly not an issue for the jury in any patent case, and therefore not a

legitimate justification for combining these counts with the patent infringement action. It is also not a legitimate basis to allow the patent case to be derailed.

Additionally, the present dispute unfortunately arises from misrepresentations by TPG regarding a patent infringement action filed by TPG in the United States District Court for the Southern District of New York (Civil Action No. 09-cv-00562 (DLC)) ("the New York patent action"). Contrary to TPG's assertion, Quantum never asserted that these counterclaims are related to the ☐949 patent claim. In contrast, TPG referred to similar counterclaims brought under New York law as "collateral" to the patent matters (*i.e.*, unrelated to the patent matters). *See* Albert Declaration at ¶ 14, Exh. M at 5:10-6:20. Quantum simply argued that discovery regarding infringement of the ☐949 patent in New York would be duplicative of discovery in Delaware, and that the New York action should be stayed pending resolution of TPG's motion to transfer the Delaware case to New York. Accordingly, the factual premise for the Court's Order is incorrect. In any event, TPG has dismissed the New York patent action.

Quantum respectfully requests that the Court sever Counts V, VI, VII, and XI of TPG's Counterclaims and place them on a separate track for discovery and trial. *See Enzo Life Scis., Inc. v. Digene Corp.*, 2003 U.S. Dist. LEXIS 10202, *17 (D. Del. June 10, 2003) (Farnan, J.) ("Also, in order to enhance jury comprehension and avoid prejudice, the Court will separate the issues into three sequential phases for trial in the following manner: 1) infringement; 2) validity; and 3) Business Tort Counterclaims. Although the Court recognizes that there is some evidentiary overlap, the parties will not be prejudiced by separate trials and the procedure will produce an efficient and fair disposition of the parties' claims.")

## III. CONCLUSION

For the foregoing reasons, Quantum's motion to sever, dismiss, bifurcate, or transfer should be granted.

-11-

                                            ASHBY & GEDDES

                                            */s/ Andrew C. Mayo*

                                            _____
                                            John G. Day (I.D. #2403)
                                            Lauren E. Maguire (I.D. #4261)
                                            Andrew C. Mayo (I.D. #5207)
                                            500 Delaware Avenue, 8th Floor
                                            P.O. Box 1150
                                            Wilmington, DE 19899
                                            (302) 654-1888
                                            jday@ashby-geddes.com
                                            lmaguire@ashby-geddes.com
                                            amayo@ashby-geddes.com

*Of Counsel:*                                   *Attorneys for Plaintiffs*

Brian T. Moriarty
Christopher K. Albert
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
brian.moriarty@hbsr.com
christopher.albert@hbsr.com

Dated: January 5, 2012

{00589721;v1}