# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| QUANTUM LOYALTY SYSTEMS, INC. and QUANTUM CORPORATION OF NEW YORK, INC., | : : : : : | |
| Plaintiffs, | : | C.A. No. 9-22-SLR-MPT |
| v. | : : | |
| TPG REWARDS, INC., | : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : | |

### DEFENDANT'S RESPONSE TO QUANTUM'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER <u>DENYING QUANTUM'S MOTION TO SEVER  (D.I. 178)</u>

CONNOLLY BOVE LODGE & HUTZ LLP
Francis DiGiovanni (#3189)
Chad S.C. Stover (#4919)
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801
Phone: (302) 888-6316
Fax: (302) 658-5614
FDiGiovanni@cblh.com
cstover@cblh.com

*Attorneys for Defendants*
*TPG Rewards Inc. and John Galinos*

OF COUNSEL:
Robert T. Maldonado (*Admitted pro hac vice*)
Norman H. Zivin (*Admitted pro hac vice*)
Tonia A. Sayour (*Admitted pro hac vice*)
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 278-0400
RMaldonado@cooperdunham.com

Dated:  January 19, 2012

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    A.   Declaratory Judgments Concerning '383 and '294 Patents
        (Counts II and III) .................................................................................................. 2

    B.   Cybersquatting Claims (Counts VIII-X) ................................................................. 6

    C.   Attempted Monopolization/Antitrust Claim (Count IV) ........................................... 7

    D.   False Advertising/Unfair Competition Claims (Counts V-VII and IX-XI) ............... 8

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*ATMI Packaging, Inc. v. Millipore Corp.*,
   2011 WL 1740421 (D. Mass. 2011) ................................................................................. 5

*D2L Ltd v. Blackboard, Inc.*,
   671 F. Supp. 2d 768 (D. Md. 2009) .................................................................................. 5

*Plumtree Software, Inc. v. Datamize, LLC*,
   473 F.3d 1152 (Fed. Cir. 2006) ................................................................................ 2, 3, 5

*Prasco, LLC v. Medicis Pharm. Corp.*,
   537 F.3d 1329 (Fed. Cir. 2008) ........................................................................................ 5

*Streck Inc. v. Research & Diagnostic Systems, Inc.*,
   2012 WL 45398 (Fed. Cir. 2012) ................................................................................. 3, 4

*Tesco Corp. v. Weatherford Intern., Inc.*,
   2009 WL 497134 (S.D. Tex. 2009) .................................................................................. 5

*Teva Pharm. USA, Inc. v. Novartis Pharmaceuticals Corp.*,
   482 F.3d 1330 (Fed. Cir. 2007) ........................................................................................ 5

*Vutek, Inc. v. Leggett & Platt, Inc.*,
   2008 WL 495648 (E.D. Mo. 2008) .................................................................................. 5

**Rules**

Fed. R. Civ. P. Rule 72(a) .................................................................................................... 1

**Other Authorities**

BLACK'S LAW DICTIONARY (6th ed.) at 261 ............................................................................ 9

# INTRODUCTION

Under Rule 72(a), Fed. R. Civ. P., which Quantum acknowledges applies here, the Magistrate's Order cannot be modified or set aside unless it is found to be "clearly erroneous or … contrary to law."  Under this standard, the Court's review of the issues decided by the Magistrate Judge is not *de novo*.  Quantum urges a *de novo* review.  Since the Magistrate Judge's order denying severance is not clearly erroneous, it should not be modified or set aside.[1]

The gist of Quantum's objections is that this case will be delayed if TPG is permitted to pursue its counterclaims.  Yet, at every turn, Quantum has delayed the progress of this action, and prevented this case from moving forward expeditiously, as ordered by the Court.  One striking example is Quantum's refusal to provide discovery, even as to its own claim of infringement of the '949 patent.[2]  TPG is entitled to pursue its counterclaims together with Quantum's '949 patent infringement claim, and Quantum's assertion that allowing TPG to do so will delay this case has no merit.[3]

---

[1] TPG did not concede that its counterclaims are factually distinct from Quantum's infringement claim (they are not), as alleged by Quantum. (D.I. 178 at 1.)   If TPG had so conceded, it would not have opposed Quantum's motion to bifurcate.

[2] In its response to an interrogatory served by TPG seeking Quantum's infringement contentions, Quantum answered that it was unable to provide infringement contentions because it needs to take discovery of TPG first, and because the Court has not yet construed the claims.  Quantum's response was disingenuous at best.  First, Quantum already has had full discovery concerning the functionality of the accused products.  Second, Quantum should have developed infringement contentions before it filed this expensive patent infringement suit.  At TPG's insistence, Quantum served an amended response, but continues its refusal to provide infringement contentions.

[3] Quantum's assertion that TPG "has sought extensive discovery on matters entirely unrelated to Quantum's initial patent infringement action" is incorrect.  (D.I. 178 at 2). Although Quantum informs the Court that TPG served 95 document requests and 15 interrogatories, Quantum fails to inform the Court that only 8 of TPG's document requests and 1 of TPG's interrogatories seek discovery on matters other than Quantum's '949 patent infringement claim.  Nor does Quantum inform the Court that **all** of the third party

**ARGUMENT**

**A.     Declaratory Judgments Concerning '383 and '294 Patents (Counts II and III)**

Magistrate Judge Thynge considered the totality of the circumstances, and determined that subject matter jurisdiction exists over TPG's counterclaims concerning the '383 patent and the '294 patent, which are the grandparent and parent of the '949 patent asserted by Quantum. Therefore, the Court denied Quantum's motion to sever or bifurcate these claims. This was not clearly erroneous or contrary to law. Quantum argues that the Court lacks subject matter jurisdiction[4] because Quantum never threatened TPG with those patents.[5] This argument fails as a matter of law. (D.I. 163 at 2.)

Contrary to Quantum's assertion, the Magistrate Judge's reliance on *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152 (Fed. Cir. 2006), was not misplaced. Indeed, Quantum misrepresents the facts in *Plumtree*, when it suggests that declaratory judgment jurisdiction existed in that case because the patentee had written a letter to the Plaintiff stating its belief that Plaintiff infringed the continuation patents. To the contrary, the Federal Circuit expressly noted that the letter from the patentee "did not refer to the '418 patent," which was one of the patents for which Plaintiff sought a declaratory

---

subpoenas served by TPG seek information relating to Quantum's patent infringement claim.

[4]     Quantum has abandoned its argument that the '383 patent and the '294 patent are factually unrelated to the '949 patent.

[5]     Quantum's complaint that it "has <u>never</u> been afforded an opportunity to move for dismissal based on the pleadings" has been waived (D.I. 178 at 3; emphasis in original.) On October 3, 2011, Quantum answered TPG's counterclaims without moving to dismiss any of them. (D.I. 155). As this Court previously ruled in this case, the filing of an answer moots a motion to dismiss. (*See* D.I. 154 (noting that TPG's renewed motion to dismiss was moot not only because Quantum filed an amended pleading, but also because TPG filed a response to that pleading)). Further, on October 20, 2011, the Court ruled that it would not entertain any motions to dismiss at this time, and Quantum never sought reconsideration of that ruling. (Oct. 20, 2011 Transcript at 4:12-16). It is too late for Quantum to complain now.

judgment. *Id.* at 1158. In *Plumtree*, as in the present case, declaratory judgment jurisdiction existed because the patent owner's course of conduct created a reasonable apprehension of suit:

> [T]he three patents all describe a similar technology and share a common specification. Here, as in *Goodyear* and *Vanguard*, "[b]y suing [earlier] for the same technology as is now covered by the patents [in suit], [the patent holder] has engaged in a course of conduct that shows a willingness to protect that technology," *Goodyear*, 824 F.2d at 956, and has created a reasonable apprehension of suit. *Id.* at 1159.

*Plumtree* is directly on point, and supports jurisdiction over counterclaims II and III in this action.

The recent Federal Circuit decision cited by Quantum (D.I. 183), *Streck Inc. v. Research & Diagnostic Systems, Inc.*, 2012 WL 45398 (Fed. Cir. 2012), does not overrule *Plumtree*, and is readily distinguishable. In *Streck*, the defendant's "counterclaim only sought a declaration of invalidity with respect to the 'asserted claims.'" *Id.* at *8. At the beginning of the case, the Plaintiff had asserted certain claims, and, later in the case, the Plaintiff narrowed the group of asserted claims, thereby disclaiming its allegations of infringement as to the non-asserted claims. *Id.* at *3. The Court held that the district court lacked jurisdiction over the non-asserted claims of the patents-in-suit because (1) the counterclaim only sought a declaration as to the validity of the asserted claims; and (2) the Plaintiff "affirmatively disclaimed its allegations of infringement," and, therefore, the Defendant had no reasonable apprehension that it would face an infringement suit on any claims other than those asserted. *Id.* at *8, *10 (*citing Scanner Technologies Corp. v. ICOS Vision Systems Corp.*, 528 F.3d 1365, 1382-83 (Fed. Cir. 2008)). In the present case, TPG's counterclaims are not limited to the asserted claims, but encompass all claims of the patents. Furthermore, Quantum has not "affirmatively disclaimed" any of the claims in the

3

'294 patent or the '383 patent. In *Streck*, after the Plaintiff disclaimed its allegations of infringement as to certain claims of the patents-in-suit, Plaintiff was estopped from asserting those claims against the same activities of Defendant in the future. To the contrary, in this case, there is nothing to prevent Quantum from suing TPG on any claims of the '294 patent or the '383 patent, in another suit in another forum at any time in the future. Thus, *Streck* does not apply to this case.

The Magistrate Judge considered the totality of the circumstances, including (i) that Quantum commenced this action against TPG on the '949 patent, which is nearly identical to the '383 and '294 patents;[6] (ii) that Quantum marks all three patent numbers on its "Hollywood Movie Money" product, which competes head-to-head with the accused e-Movie Cash product; and (iii) that the parties are engaged in the present litigation involving the same technology, which demonstrates Quantum's obvious interest in enforcing its patent rights with respect to this technology.[7] After considering these various factors, the Magistrate Judge properly concluded that a controversy of sufficient immediacy and reality exists as to all three patents.[8] The controversy between the parties concerning all three patents clearly is not "purely subjective or speculative," as in *Prasco, LLC v. Medicis*

---

[6] *See* Exhibit 1 attached hereto, which is a chart comparing claim 1 of the '294 patent with claim 3 of the '949 patent. As the Court will see, the claims are nearly identical. One patent (the '294 patent) uses the word "ticket," whereas the other patent (the '949 patent) uses the word "payment mode" to refer to the same thing. This comparison undercuts Quantum's argument that "there is no overlap [between the patents] because each has different claims." (D.I. 178 at 5.)

[7] Quantum purchased the three patents from a bankruptcy auction, for the purpose of suing TPG, as confirmed by the fact that it commenced this action shortly after it acquired the patents.

[8] Contrary to Quantum's assertion, the Magistrate Judge did not "focus[] on an assumed evidentiary overlap." (D.I. 178 at 5.)

*Pharm. Corp.*, 537 F.3d 1329, 1338-39 (Fed. Cir. 2008).[9]  This conclusion is not clearly erroneous and is consistent with controlling case law. *See Plumtree*, 473 F.3d 1152; *Teva Pharm. USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) ("related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents"); *see also D2L Ltd v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 776-77 (D. Md. 2009) (history of litigation over similar patents coupled with refusal to agree to standstill agreement support declaratory judgment jurisdiction); *Tesco Corp. v. Weatherford Intern., Inc.*, 2009 WL 497134, at *3 (S.D. Tex. 2009) (claims overlapped); *Vutek, Inc. v. Leggett & Platt, Inc.*, 2008 WL 495648 (E.D. Mo. 2008) .[10]

Having these counterclaims in the case will not increase discovery, as Quantum suggests, because all three patents have a common specification and very similar, if not nearly identical, claims; the '294 patent is otherwise in the suit because it is implicated in TPG's defense of obviousness-type double patenting; and the discovery concerning each patent will be the same.  Quantum incorrectly asserts that the Court will be required to conduct "three *Markman* hearings, encompassing 204 claim terms for construction." (D.I. 178 at 5.)  To the contrary, the Court will only be required to hold one *Markman* hearing. The claim terms that the Court will construe will be limited (to a number well below 204),

---

[9]  In *Prasco*, the Federal Circuit also held that defendant's failure to sign a covenant not to sue is a factor to be considered in evaluating the totality of the circumstances. 537 F.3d at 1341.  Although not in the record before Magistrate Judge Thynge, in this case, Quantum has refused to provide TPG with a covenant not to sue under the '383 patent or the '294 patent.

[10]  Quantum's reliance on a decision from the District of Massachusetts, *ATMI Packaging, Inc. v. Millipore Corp.*, 2011 WL 1740421 (D. Mass. 2011), is unavailing because there was no discussion in that case of the relatedness of the patents or of any similarity of the claims of the patents.

5

as many of the same terms are used in the claims of all three patents, and will have the same meaning in all three patents. TPG has identified only 17 discrete terms from the three patents which it believes may require construction.[11] Twelve of those 17 terms are used in the claims of the '949 patent. Furthermore, the fact that every counterclaim entails additional discovery does not warrant severance. Accordingly, since the Magistrate Judge's order denying severance of counterclaims II and III was not clearly erroneous or contrary to law, it should not be set aside.

B.   **Cybersquatting Claims (Counts VIII-X)**

In its Objections, Quantum asserts that the Magistrate Judge committed clear error by not transferring Counts VIII-X to the Southern District of New York because Quantum alleges that these claims were released in a prior suit, and a forum selection clause in that suit (which does *not* apply to those claims) allegedly specifies New York as the forum to

---

[11]   Quantum, on the other hand, disingenuously identified **169** claim terms for the Court to construe, in a transparent attempt to bolster its instant objections to the Magistrate Judge's order denying its motion to sever. Quantum cannot seriously contend that the Court needs to construe 169 claim terms. For example, Quantum has identified the following terms for construction, and has proposed the following preliminary constructions:

|      | Claim Term Identified by Quantum | Quantum's Proposed Construction |
|------|----------------------------------|----------------------------------|
| 32.  | Permitting                       | To make possible                 |
| 40.  | More than one person             | Greater than one human being     |
| 74.  | Computer implemented             | Performed by a computer          |
| 84.  | Per ticket                       | For each ticket                  |
| 86.  | Location                         | place                            |
| 102. | Internet site                    | A website                        |
| 111. | Readable                         | Capable of being read            |
| 130. | Allowing                         | Permitting                       |
| 134. | Different                        | Dissimilar                       |
| 160. | Exceed                           | To be greater than               |

These are just examples of some of the terms which Quantum improperly has identified as requiring construction. TPG believes that this is further evidence of Quantum's failure to litigate in good faith.

6

litigate such claims. Quantum is incorrect. Quantum's discussion of the prior release is not relevant to its motion to transfer, and provides no basis for transferring the counterclaims to New York.[12] As to the forum selection clause, the agreement contains two separate and different forum selection clauses. The parties expressly agreed that disputes relating to the Consent Judgment will be brought in the Southern District of New York, but disputes relating to issues in the Settlement Agreement which are not in the Consent Judgment, may be brought in Delaware. Quantum's attempt to conflate the two, by arguing that all disputes relating to the Settlement Agreement also necessarily require construction of, and therefore relate to, the Consent Judgment, must fail as such an interpretation would nullify the forum distinction that Quantum insisted upon. TPG's counterclaims VIII-X are not based on the Consent Judgment, which was solely limited to Quantum's cybersquatting by registering the domain name www.tpgrewards.ca, and using it to mis-direct potential customers searching for TPG to Quantum's website. That domain name is not the basis for counterclaims VIII-X. The Magistrate Judge correctly applied the appropriate forum selection clause.

The Magistrate Judge ruled against bifurcation or severance because (i) TPG's claim involves a different domain name, which was not the subject of the prior suit; and (ii) Quantum acknowledges that issues relating to the settlement agreement may be litigated in Delaware. This conclusion is manifestly correct, and is not clearly erroneous.

**C. Attempted Monopolization/Antitrust Claim (Count IV)**

Quantum points to no clear error committed by the Magistrate Judge in denying its request to sever the antitrust counterclaim. Instead, Quantum argues that antitrust counterclaims have been bifurcated in a few other cases, so they should have been

---

[12] Quantum did not argue that these claims should have been dismissed by the Magistrate Judge. (D.I. 178 at 5-7.)

7

bifurcated here. There is no merit to this argument, as each case stands on its own facts. Further, TPG cited an equal number of cases which denied bifurcation of antitrust counterclaims. (D.I. 163 at 3.) The Magistrate Judge held that bifurcation would neither reduce jury confusion nor promote efficiency, and this conclusion is not clearly erroneous. The Magistrate Judge found that jurors were not likely to be confused, and bifurcation would not increase efficiency, but rather would result in duplicative evidentiary presentations on the same issues (e.g. fraudulent procurement of a patent). Moreover, contrary to Quantum's assertion, this counterclaim is not wholly dependent upon the outcome of Quantum's '949 patent infringement claim because it is based on a course of conduct by Quantum which is not limited to Quantum's misuse of its patents. The Magistrate Judge's denial of Quantum's request to sever this counterclaim was not clearly erroneous.[13]

### D.  False Advertising/Unfair Competition Claims (Counts V-VII and IX-XI)

With respect to counterclaims V-VII and IX-XI, the Magistrate Judge ruled that these counterclaims should not be severed (i) because they overlap with the antitrust counterclaim, which should not be severed; (ii) Quantum requested a stay of these counterclaims in New York because they are related to the '949 patent claim; and (iii) the factual basis for these counterclaims overlaps with facts relating to defenses to the '949 patent claim. This finding is not clearly erroneous. Quantum argues that severance should have been granted because these counterclaims are factually unrelated to its '949 patent

---

[13] To the extent Quantum argues that it was never permitted to move to dismiss this counterclaim (D.I. 178 at 8), Quantum never sought permission to move to dismiss this counterclaim. To the contrary, at the oral argument on TPG's renewed motion to dismiss, counsel for Quantum suggested that ***all motions*** be held in abeyance until after the close of discovery. (Sept. 29, 2011 Transcript at 21:3-4.) Accordingly, Quantum should not be heard to complain that it was never permitted to move to dismiss when it was the party which requested that no further motions to dismiss be entertained by the Court at this time.

infringement claim, and because TPG purportedly made misrepresentations regarding the prior New York Action. (D.I. 178 at 9-10.) Neither argument has any merit. The Magistrate Judge found that these claims factually overlap with Quantum's '949 patent infringement claim. Quantum cannot seriously argue that claims relating to its issuance of a press release about this very lawsuit are factually unrelated to this lawsuit. In fact, when TPG filed a motion for a preliminary injunction in the New York Action to enjoin Quantum from soliciting TPG's customers with the false Press Release, Judge Cote would not consider the motion because she thought it should be brought in this action. Quantum's contrary argument now is without merit. Nor can Quantum seriously argue that its failure to conduct a pre-filing investigation *of TPG's alleged infringement of the '949 patent* is not factually related to Quantum's '949 patent infringement claim. The factual connection is clear.

Quantum's assertion that TPG allegedly made misrepresentations about the New York action is without basis. To the contrary, it is Quantum who has misrepresented the record in that action. Quantum incorrectly informs the Court that "*TPG* referred to similar counterclaims brought under New York Law as 'collateral' to patent matters (i.e. unrelated to patent matters)." (D.I. 178 at 10.) This statement is incorrect on two fronts. First, the characterization of TPG's claims as "collateral" was made by counsel for Quantum (Mr. Moriarty), *not* by TPG, as is clear from the transcript which Quantum cited. Second, the definition of "collateral" is *"related to"* not "unrelated to" as Quantum represents. BLACK'S LAW DICTIONARY (6th ed.) at 261. Therefore, Quantum admitted to Judge Cote that these counterclaims are related to the '949 patent infringement claim, and cannot disavow that now. Tellingly, Quantum never moved to dismiss any of these counterclaims in the New York action. Instead, Quantum requested, and was granted, a stay. If these

9

counterclaims were not related to the '949 patent infringement claim there would be no basis for a stay. Quantum has provided no explanation as to why these counterclaims would have been stayed in New York pending a resolution of an unrelated patent infringement claim in Delaware. There is no logic to support such an assertion. The Magistrate Judge's ruling was not clearly erroneous.[14]

## CONCLUSION

Based on the foregoing, Quantum's request to set aside the Magistrate Judge's Order Denying Quantum's Motion To Sever (D.I. 175) should be denied in all respects.

Dated: January 19, 2012

/s/ Chad S.C. Stover
Francis DiGiovanni (#3189)
Chad S.C. Stover (#4919)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801
Phone: (302) 888-6316
Fax: (302) 658-5614
FDiGiovanni@cblh.com
cstover@cblh.com

*Attorneys for Defendant TPG Rewards, Inc.*

OF COUNSEL:
Robert T. Maldonado (*Admitted pro hac vice*)
Norman H. Zivin (*Admitted pro hac vice*)
Tonia A. Sayour (*Admitted pro hac vice*)
Eric M. Eisenberg *(Admitted pro hac vice)*
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112

---

[14] Again, by citing another case where bifurcation was awarded (D.I. 178 at 10), Quantum is seeking *de novo* review of Magistrate Judge Thynge's decision, which is not permitted. Quantum cannot argue that the Magistrate Judge's decision was clearly erroneous because another judge reached a different conclusion in a different case involving different facts.

       Tel.: (212) 278-0400
       Fax: (212) 391-0525
       RMaldonado@cooperdunham.com