IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUANTUM LOYALTY SYSTEMS, INC., and QUANTUM CORPORATION OF NEW YORK, INC., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 09-022-SLR/MPT |
| TPG REWARDS, INC., | : : : | |
| Defendant. | : : | |

## **MEMORANDUM ORDER**

A discovery dispute teleconference was held on February 6, 2012, after the parties submitted letter briefs on the issues. Both sides had issues regarding the opposing party's responses (or lack thereof) to written discovery. One matter raised by defendant ("TPG") was plaintiffs' ("Quantum") responses to its second set of interrogatories, specifically interrogatory nos. 6-8.

After the court heard argument on the various matters and provided its guidance, comments and thoughts concerning the parties' respective positions, the parties agreed to a further meet and confer to resolve those issues on which the court had not ruled. As a result, the parties were able to resolve the remaining outstanding matters except for one, Quantum's responses to interrogatory no. 7. This Order addresses the issues regarding Quantum's responses to interrogatory no. 7.

**Relevant Background**[1]

On January 12, 2009, Quantum filed a complaint against TPG alleging infringement of the '949 Patent, which it subsequently amended on April 17, 2009. In the amended complaint, Quantum alleged TPG's making, use, sale or offer for sale of the Movie Cash debit card product and e-Movie Cash product infringes the '949 Patent. After two report and recommendations deciding TPG's motions to dismiss, from which objections were filed, a second amended complaint was filed by Quantum on August 22, 2011.[2] TPG's answer was filed September 8, 2011, which includes various counterclaims.[3] Quantum answered TPG's counterclaims on October 3, 2011.[4] TPG served a second set of interrogatories on November 8, 2011,[5] which includes the disputed interrogatory.

**Positions of the Parties**

According to its letter brief, TPG maintains Quantum's original and supplemental responses to interrogatory no. 7 are inadequate. It notes Quantum contends TPG's 1993 "Movie Cash" check product ("1993 product") and 2002 "Movie Cash" debit card product ("2002 product") do not fall within the scope of the '949 patent. TPG's interrogatory no. 7 requests Quantum provide a claim chart showing the elements of each claim which are not present in these prior art products. In responding to

---

[1] The present discovery dispute is only one of innumerable contacts the court has had with the parties, including motions to dismiss, scheduling conferences and orders, status conferences and regular teleconferences addressing discovery matters. Therefore, only a "CliffsNotes" version of the "Background" is provided.
[2] D.I. 144.
[3] D.I. 146.
[4] D.I. 155.
[5] D.I. 166.

2

interrogatory No. 7, Quantum appears to rely on Fed. R. Civ. P. 33(d), which allows parties to rely on business records. TPG maintains the records on which Quantum relies are not business records, but rather 23 documents from this court's docket index in this litigation.

In its letter brief response, Quantum argues interrogatory no. 7 requests a detailed claim chart explaining why TPG's 1993 and 2002 products do not infringe, which is a veiled effort to require Quantum's counsel to divulge its work product. According to Quantum, since it does not accuse either product of infringement, the interrogatory does not seek relevant evidence under FED. R. CIV. P. 26(b), and therefore, is improper, relying on *Leader Tech., Inc. v. Facebook Inc.*[6]

Two teleconferences, which, in part, related to the dispute surround interrogatory no. 7, helped crystallize the parties' positions and issues.[7]

Interrogatory no. 7 requests for each claim of the patent-in-suit Quantum's legal and factual basis supporting its contention, if any, that the claim does not cover the 1993 product or the 2002 product and provide for each claim and each prior TPG product, a chart or detailed narrative, with each term of the claim and a side-by-side comparison separately specifying which element either corresponds or is not present in the prior TPG product, along with identifying all documents and persons, other than counsel, who are most knowledgeable about such contentions.

TPG contends the 1993 product falls within the scope of the '949 patent claims

---

[6] No.08-862-JJF/LPS, 2009 WL 3021168 (D. Del. Sept. 4, 2009).
[7] Further discussion regarding this issue occurred during the scheduling teleconference on February 16, 2012.

making it prior art and has provided a claim chart explaining its defense.

Regarding the 2002 product, TPG does not initially argue it falls with the scope of the claims; however, it also maintains its 2002 product and 2008 and going forward products are the same, since they perform the same function and have the same features. TPG provided a claim chart showing why the 2002 product does not fall within the scope of the patent, and a claim chart showing why it would fall within the scope, if it were determined the 2008 and going forward products fell within the scope of the patent. TPG's argument regarding the 2002 product is in the alternative: because both the 2002 product and the 2008 and going forward products are the same, they do not infringe. However, if the 2008 and going forward products are found to infringe, then the 2002 product operates as prior art. TPG is requesting from Quantum as follows: for the 1993 product (check product) a claim chart countering TPG's chart explaining why this product is not prior art to the '949 patent, and regarding the 2002 product (debit card), a claim chart showing why it does not meet the limitations of the claims being asserted against the later debit card (the 2008 and going forward products).[8]

Quantum accuses the 2008 and going forward products of infringement, but denies the 2002 product and the 2008 and going forward products are the same. During the teleconference, Quantum's counsel briefly outlined why the 2002 product and the 2008 and going forward products are different.

The crux of the present discovery issue between the parties is their disagreement over whether the 2002 product and the 2008 and going forward products are the same,

---

[8] *See* Transcript dated February 16, 2012 42:23-44:5

probably founded in part on construction differences (and/or their respective spin) on any disputed claim term.  Such a dispute is nothing unusual, and very typical, in patent litigation.

Unlike the issue in *Leader Tech. Inc. v. Facebook Inc.*, TPG is not seeking a comparison between the claim terms at issue with unaccused products of the patentee; rather TPG is requesting discovery from Quantum related to its invalidity defense, seeking why the 1993 and 2002 products are not prior art–neither a unique nor unusual discovery request.  Contrary to Quantum's protestations, both products are at issue as prior art.

Regarding FED. R. CIV. P. 33 which authorizes the option to produce business records,[9] Quantum's reliance is misplaced.  Merely parroting claim language and generally pointing to docket entries which include, for example, answering briefs, counsel's declarations, objections to reports and recommendations, or responses to a motion for leave to file a reply brief are inadequate responses.  None of the documents referenced constitute business records of a party, nor adequately affirm the factual bases or the application of law to fact for why a product is not prior art.  Accordingly,

IT IS HEREBY ORDERED that:

1. On or before March 23, 2012, Quantum shall supplement its response to interrogatory no. 7 of TPG's second set of interrogatories by separately identifying for

---

[9] Rule 33(d) option to product business records provides: "[i]f the answer to an interrogatory *may be determined* by examining, auditing, compiling, abstracting, or summarizing *a party's business records* . . ., and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:  (1) specifying the records that must be reviewed *in sufficient detail* to *enable* the interrogating party to locate *and identify* them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  (emphasis added).

each product, that is the 1993 product and the 2002 product as described herein, each claim limitation of the '949 patent which it contends does not cover that product and explain in detail the factual bases, including for example, why and how each product for each identified claim term is not covered by that term.  Quantum may respond by providing a separate claim chart for each product, separately listing each claim term along with the detailed factual bases, or may separately for each product and claim term provide the same information in a narrative format.  In addition, Quantum shall specifically identify the documents, for example by bates numbers which may be inclusive, on which it presently relies in support of its contentions, along with the identity of the person(s), other than counsel in this litigation, who is/are most knowledgeable regarding its contentions.  Identifying documents by merely referencing to the court's docket index is not properly responsive.

     2. The date contained in paragraph 1 above is in addition to the dates on which the parties agreed to update their contention interrogatory responses as according to paragraph 6 of attorney Francis DiGiovanni's email to the court dated February 9, 2012.


Dated: March 6, 2012　　　　　　　　　/s/ Mary Pat Thynge
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE